Joe YOST et al., Appellants,

v.

JUSTIN BELT COMPANY, INC., et al.,
Appellees.

Nos. 17356, 17361.

Court of Civil Appeals of Texas,
Fort Worth.

Dec. 1, 1972.

Rehearing Denied Jan. 12, 1973.

Woodrow Bean, El Paso, Law, Snakard, Brown & Gambill, and Samuel A. Denny, Fort Worth, for appellants Tony Lama Co., Inc. and Tony Lama Leather Products, Inc.

H. G. Wells, Fort Worth, for appellants Roger E. Souder and Joe Yost.

Dee J. Kelly, Fort Worth, for appellees.

## OPINION

MASSEY, Chief Justice.

Appeals, consolidated, are from a judgment in a suit for declaratory relief filed by those who were plaintiffs, and from a temporary injunction order sought by way of cross-action in behalf of those who were defendants in the declaratory judgment action. In the first instance those appealing were Joe Yost and Roger E. Souder. In the second they are Yost and Souder and also Tony Lama Company, Inc. In other words the original plaintiffs were dissatisfied with the declaratory judgment and appealed therefrom; and they, along with Tony Lama Company, were futhermore dissatisfied with the temporary injunction imposed upon them and appealed therefrom, as well. Also, those who were original defendants, and became cross-plaintiffs seeking injunctive relief, were dissatisfied with what they deem to have been the trial court's reformation of that same contract relative to which plaintiffs sought their declaratory relief, and attack such reformation by a cross-point on appeal. They were Justin Belt Company, Inc., and H. J. Justin & Sons, Inc.

Judgment affirmed in part, in part reformed and as reformed affirmed, and in part reversed and rendered as applied to injunction. Judgment awarding declaratory relief is reversed and rendered.

We will attempt to simplify the case by an initial consideration of what the parties mistake as the trial court's reformation of the contract in question. In our opinion the trial court's action was one which merely declared rights of the parties under the contract upon the assumption that it was valid. As will later be seen we hold the contract to have been invalid and to furnish no support for declaratory relief.

It simplifies our description of the factual background and law controlling the case to view it merely as an appeal by Roger E. Souder, Joe Yost, and Tony Lama Company, Inc., from a decree of temporary injunction granted upon the application of Justin Belt Company, Inc., and H. J. Justin & Sons, Inc.

The contract in question was one wherein, in consideration of the dismissal with prejudice of a certain suit for injunction theretofore filed by Justin Belt and H. J. Justin, both Joe Yost and Roger E. Souder agreed not to do certain things or to commit certain acts. On the fifth numbered of these the Tony Lama Company, Inc. (who was not a party to the suit dismissed) joined therein with Yost and Souder and agreed that from and after the contract date it would not "employ any person who shall be employed by either JUSTIN BELT COMPANY, INC. or H. J. JUSTIN & SONS, INC." The agreement of Yost and Souder included their promise not to engage in the boot business or manufacture thereof, not to use or communicate any confidential information or trade secrets of Justin Belt or H. J. Justin obtained during the course of a prior employment of both Yost and Souder, not to criticize or impugn Justin Belt or H. J. Justin or any of their products, not to use any special equipment and/or techniques which shall have been developed in the plants operated by Justin Belt and H. J. Justin, and other negative covenants of like tenor.

As is readily perceived Yost and Souder contracted, or purportedly contracted, to refrain from engaging in a particular competitive business, the boot business, by an agreement independent of and in no way ancillary to any other contract. Most assuredly was there a total absence of ancilarity to any other contract for the *transfer* of goodwill or other subject of property, and at time of the contract neither Yost nor Souder was an employee of either Justin Belt or H. J. Justin.

Since Texas has followed the law as expressed in Restatement of the Law, Contracts, Sec. 515, "When a Restraint of Trade Is Unreasonable", we will quote the portions of the text of the Rule set forth therein applicable to the instant case: "A

restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it

"(a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or

"(b) imposes undue hardship upon the person restricted, or

" . . .

"(d) unreasonably restricts the alienation or use of anything that is a subject of property, or

"(e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property or to an existing employment or contract of employment."

We also quote from Restatement of the Law, Contracts, Sec. 516, "Instances of Reasonable Restraints", in part, as follows: "The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly:

"(a) A bargain by the transferor of property or of a business not to compete with the buyer in such a way as to injure the value of the property or business sold;

"(b) A bargain by the buyer or lessee of property or of a business not to use it in competition with or to the injury of the seller or lessor;

" . . .

"(f) A bargain by an assistant, servant, or agent not to compete with his employer, or principal, during the term of the employment or agency, or thereafter, within such territory and during such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent."

■ In view of the recitations of law under the Restatement (Sec. 515, Subdivision (e)) and its application to the facts and circumstances of the case, we hold that the trial court erred—even on temporary injunction to preserve the *status quo*—in its enjoinder of Roger E. Souder from engaging in the boot business. Only Souder was thus enjoined. It is obvious that Souder's negative covenant was against public policy as a promise to refrain from competition, his promise not being ancillary to any contract for the *transfer* of any good-will or other property or property-right, or to an existing employment or contract of employment.

■ In Williston on Contracts, Revised Edition, p. 4578, Ch. XLVIII, "Illegal Bargains: Contracts in Restraint of Trade", Sec. 1635, "Reasons for holding restraint invalid", we observe the underlying philosophy of the rule to have been founded upon the mischief which might arise from such restraints, 1st, to the party, by the loss of his livelihood, and the subsistence of his family; 2nd, to the public by depriving it of a useful member. It is noted that in the United States our law has been chiefly concerned with the injury to the public—not that arising indirectly from the injury to the promisor, but that arising from lack of competition, with the consequent tendency to at least a partial monopoly owing to the withdrawal of the promisor from the field. Furthermore if such a bargain affects interstate trade or commerce, as obviously is the circumstance in the instant case, its validity will be judged by Federal law and not by that of the state where it was made.

We will quote from the section following, Sec. 1636 (on p. 4582), "Reasonableness of restraint", as follows: "Finally, even though neither of the foregoing objections exists, the effect of the promise on the public interest may be such as to make enforcement contrary to public policy. In considering the nature of this last objection, it must be recognized at the outset that the purpose of any restrictive agreement is

almost always to lessen competition with the promisee, thereby enabling him to do a larger business and on terms more favorable to himself than he could do if he had not obtained the promise in question. This purpose has been regarded, especially in the United States, as so inimical to the public interest that generally it is only in cases where the restrictive promise is ancillary to some other transaction that its validity has been upheld. Thus, if a dealer should pay a competitor to promise to go out of business, or cease to compete, the agreement would be invalid. But if the same promise were part of a transaction by which the competitor's business was bought, the promise would be valid, unless tending to a dangerous monopoly. The policy of allowing the owner of property to sell it on such terms as to secure to the buyer the value of the property must here be balanced against the policy opposing restrictions of competition."

On the foregoing proposition see 3 A.L.R. 250, Annotation: "Contract to keep out of a particular business as an unlawful restraint of trade, when independent of any other contract", as supplemented in 91 A.L.R. 980. In accord with the rule in the Restatement and Williston on Contracts is the case of Potomac Fire Ins. Co. v. State, 18 S.W.2d 929, 934 (Austin, Tex.Civ.App., 1929, error refused), and Brooks Gas Corporation v. Sinclair Oil & Gas Co., 408 S.W.2d 747, 753 (Houston, Tex.Civ.App., 1966, writ ref. n. r. e.).

Justin Belt and H. J. Justin, anticipating possibility that the force of the contract might be vitiated under general rules, point out that even so, yet is the contract to be upheld because it was entered into in compromise settlement of a pending lawsuit. What occurred was that Yost and Souder had by contract of compromise settlement promised not to do some of the acts that the pending suit sought to prevent them from doing in exchange for the agreement of Justin Belt and H. J. Justin not to further prosecute the pending suit for the purpose of preventing their doing even more than these. Essentially there was by Justin Belt and H. J. Justin a waiver of any right of complaint of Yost's and Souder's entry into competition in the belt and leather goods business upon their agreement that there would be no attempt by them to enter into competition in the boot business.

Such prior suit was ended by the dismissal. Conditions to which there was agreement by compromise settlement would be deemed to obtain at the time of the hearing of the temporary injunction in the instant later filed case on appeal. By the suit later filed there was no direct attack upon, or attempt to set aside the prior judgment of dismissal, as on a ground of fraud, etc. That judgment had been upon the express or implied representation to the court that the matters at issue in the suit then pending had been settled, such evidenced by the fact that the dismissal was with prejudice. There had been a contract of settlement, such contract constituting that upon which Justin Belt and H. J. Justin declared by their later suit for injunction, and also that upon which Yost and Souder declared by their suit for declaratory relief.

15A C.J.S. Compromise and Settlement § 38, p. 262, "(Impeachment and setting aside contracts for)—Illegality", reads in part as follows: "A contract of compromise is unenforceable and may be disregarded where it is illegal, is against public policy . . . ." We find no Texas case under the section nor under the section it follows in Corpus Juris. 15 Am.Jur.2d p. 962, "Compromise and Settlement", Sec. 29, "Illegality", states that "If a compromise is based upon an antecedent claim which is undisputedly and undoubtedly illegal, the compromise may be considered invalid on the ground of illegality as well as lack of consideration." It is further stated (on p. 963) that " . . . a court will generally not permit the law or any judicial machinery to be used in assisting to enforce an illegal compromise, nor will it permit either party to maintain an action or de-

fense founded upon an illegal compromise or regain what he has parted with under an illegal compromise. It has been said that if a compromise and settlement is invalid because it is illegal, the court should leave the parties where it finds them and withhold all relief." We find no Texas case under the section. 12 Tex.Jur.2d, p. 295, "Compromise and Settlement", Sec. 11, "(Validity and enforceability)—Where based on illegal claim" states, "A disputed claim that arises out of an illegal transaction affords no basis for a contract of compromise and settlement. For example, the compromise of a claim arising from a gambling contract is of no effect."

It may be that the question before us on appeal has analogy to one wherein a defendant is sued on a gambling debt for $1,000.00 but where, upon settlement and compromise he enters into a non-negotiable contract to pay $500.00 in exchange for a judgment of dismissal with prejudice; and subsequently raises the issue of illegality, and illegality of consideration, when later sued upon the contract to enforce payment of the $500.00. It is obvious as applied to such a case that the illegality and consequent unenforceability of the obligation sued upon would lie in the illegality of the consideration therefor.

Justin Belt and H. J. Justin have furnished us with list of persuasive authorities. However, in none of them was the consideration for contract of compromise, though often questionable, indisputedly and undoubtedly illegal as against public policy. Here the illegality lay in the consideration for the compromse. It had the purported effect of eliminating the defense of illegality against the right claimed by their adversaries, to-wit: right to eliminate competition in the boot business. Our holding is that where the defense of illegality as against public policy once exists in opposition to a claim of another, it continues to exist as to any part of such a claim despite the parties' entry into a contract under the terms of which the right to enforce the same or any portion of such claim is purportedly created or preserved and sought to be subsequently enforced by suit founded on a contract theory.

If we are correct in such holding it is apparent that neither Yost nor Souder could not at any time be restrained from engaging in the boot marketing and boot manufacturing business. But there is another aspect of the settlement contract to be noted, that portion where Tony Lama Company, Inc., along with Yost and Souder, agreed not to employ either Justin Belt or H. J. Justin employees. The decree of temporary injunction purported to enforce this contractual provision against Tony Lama Company and Souder. Want of authority of the trial court to render the decree as against Souder exists for the same reason that there was want of authority to enforce the Souder agreement not to compete by engaging in the boot business. It is to be remembered that in part, at least, the promissory consideration of Souder was illegal as in restraint of trade, since not ancillary to any other agreement of transfer, employment, etc. Since a part of the consideration for the Justin companies' entire contract was illegal such illegality of consideration vitiated the contract in its entirety. Under the rule of Seeligson v. Lewis & Williams, 65 Tex. 215, 223 (1885) the vitiation of illegal provisions of a contract because of illegality of promissory consideration vitiates all other provisions in the contract even though they might otherwise have been legal and enforceable. In accord is Morrison v. City of Fort Worth, 138 Tex. 10, 155 S.W.2d 908 (Tex. Sup., 1941), and cases cited therein.

There was, however, promissory consideration by another party provided by the contract; that by Tony Lama Company, Inc. In substance the Lama Company's promise was to refrain from hiring any of the employees of Justin Belt and H. J. Justin who were then employed or who might be thereafter employed by such corporations. On the appeal we are presented with the question of propriety of

any enforcement of this contractual agreement of Tony Lama Company.

We hold that the promise of Tony Lama Company, by contract, is illegal and unenforceable. Between Souder and the Justin Companies we are presented with a contract where Souder has promised to do an illegal thing. A promise to do an illegal thing for a legal, as well as an illegal, consideration is unenforceable, and equally so is a promise to do a legal thing for an illegal consideration. Where an argeement is bilateral and the promise on either side is unlawful, both promises are unenforceable; for one promise is unlawful and the other given for unlawful consideration. And if an illegal bargain has been partly executed, as by performance on the one hand in respect to the promise to do, or have done, a legal thing, yet, in effect, the parties are to be left as they stand for all relief for non-performance of the rest of the obligation would be denied. Williston on Contracts, Revised Edition, p. 5001, "Miscellaneous Illegal Bargains", Sec. 1762, "Executory and executed illegal bargains". But the importance of what is said, as related to the matter of enforceability of the obligation in the contract of the Tony Lama Company lies in the fact that the consideration therefor, given by the Justin Companies, even assumed as lawful consideration was made and delivered, in part at least, in exchange for an illegal promise by Yost and Souder. If, in addition Yost and Souder had also made a legal promise the Justin Companies could not enforce it for since their own promise and/or performance thereof was for both the illegal and legal promise. Their consideration therefore would be insufficient for the lawful promise of Yost and Souder because of impossibility to separate the legal from the illegal part of the consideration. Where the legal considerations are not apportioned to corresponding legal promises it is impossible to maintain an action on any of the promises without basing such to some degree upon the illegal portion of the consideration. Williston on Contracts, Revised Edition, Sec. 1780, "Divisibility of illegal consideration in unilateral bargains", and Sec. 1782, "Divisibility of illegal consideration in bilateral bargains."

Since a part of the consideration for the promise of the Tony Lama Company (which for purpose of discussion will be assumed to have been lawful) was promised and/or paid not only for the lawful, but in addition for the unlawful promises of Yost and Souder, there would be no way to find what legal consideration was apportioned for lawful promises by Tony Lama Company, and hence no severability. Therefore, our holding is that there would be available to the Tony Lama Company the identical defenses to any attempted imposition of liability, by contract, that we have held to have been possessed by Yost and Souder. 17 C.J.S. Contracts § 289, p. 1220, "Partial Illegality".

Despite their complete inability to rely on the contract, nevertheless the Justin Companies would, under general principles of equity, be entitled to sustain the trial court's temporary injunction against both Souder and Tony Lama Company in the aspect under consideration (with limitation as hereafter discussed).

Since the decisions in Raymond v. Yarrington, 96 Tex. 443, 73 S.W. 800 (1903) and J. S. Brown Hardware Co. v. Indiana Stoveworks, 96 Tex. 453, 73 S.W. 800 (1903) the rule in Texas has been that even in absence of contract a person commits an actionable wrong if he induces the servant of another to break his contract or employment with another, to such other's damage, in order to enter into a new employment for him who induces the breach to his benefit, or with the intent to injure the former employer.

In such an instance a question for the trial court is the adequacy of a remedy at law in the determination of whether equitable relief is warranted in a particular case. On the matter of law generally, including such element for consideration,

see 84 A.L.R. 43, Annotation: "Liability for procuring breach of contract", as supplemented in 26 A.L.R.2d 1227.

 Without detailing the evidence we will say that in the instant case it showed the inadequacy of damages to prevent the action enjoined pending hearing on the merits of the controversy between the parties. We do believe, however, that the decree of the trial court is overly extensive in that as written it would prohibit the employment by Souder or Tony Lama Company of some employee who might have severed his contract of employment with either Justin Belt or H. J. Justin for reasons unrelated to any wrongful solicitation or inducement. This the appellate court is entitled to cure without remand to the trial court under the rule of Spinks v. Riebold, 310 S.W.2d 668 (El Paso, Tex.Civ.App., 1958, error refused) and Lewis v. Krueger, Hutchinson and Overton Clinic, 153 Tex. 363, 269 S.W.2d 798 (1954). Thereunder is established the rule that the question involved is to what extent the equity court will aid the applicant in the enforcement of a right. Though in such cases the matter of proper enforcement of contracts was the matter under consideration we have no doubt that the rule would be the same in a case such as this before us.

We similarly eliminated from a temporary injunction decree the portion thereof which we deemed overly extensive in Wright Hydraulics, Inc. v. Womack Machine Sup. Co., 482 S.W.2d 34 (Fort Worth, Tex.Civ.App., 1972, no writ history) a case founded on contracts not condemned as in unreasonable restraint of trade. We stated (p. 39) as follows: "The decree of the trial court was too extensive. But that would not be something which would constitute cause to condemn it as an abuse of discretion. Rather does it exhibit an attempt to act in an area and upon subject matter when the authority to act had not been invoked— where the law would 'withhold the hand of the court.'"

We next consider the temporary injunction in relation to Yost and Souder in connection with trade secrets or confidential information. The decree of injunction read as follows: "Joe Yost and Roger E. Souder are restrained from using or communicating any formula, pattern, device, or compilation of information obtained from Justin Belt Company, Inc. and H. J. Justin & Sons, Inc., by virtue of their employment with said companies, which the competitors of said Justin Belt Company, Inc. and H. J. Justin & Sons, Inc., either do not have or do not know how to use."

Attack is made upon the aforestated portion of the decree of temporary injunction, on the following grounds: (a) that the injunction is not specific and does not describe in reasonable detail the act or acts sought to be restrained; (b) that there is no evidence that any formula, pattern, device or compilation of information which Yost and Souder might have obtained while in the employment of the Justin companies constituted a trade secret or confidential information; and (c) that in any event and assuming that such constituted trade secrets or confidential information there was no evidence of use, or threatened use, or of disclosure or threatened disclosure.

 Texas Rules of Civil Procedure 683, "Form and Scope of Injunction or Restraining Order" reads in part, as follows: "Every order granting an injunction and every restraining order shall . . .; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; . . ." That as applied to the instant case the rule and its several provisions are mandatory and controlling is obvious from the majority, concurring, and dissenting opinions in the case of State v. Cook United, Inc., 464 S.W.2d 105 (Tex.Sup., 1971). Thus, in view of the complaint made, we test the trial court's decree as to specificity of description and detail. Where the order speaks of compiled information there is no

doubt that it meets the test. The question is thus reduced to a test of specificity as applied to "formula", "pattern" and "device".

The case of West v. Pennyrich International, Inc., 447 S.W.2d 771 (Waco, Tex. Civ.App., 1969, no writ history) held insufficiently described and/or detailed the restraint imposed upon the defendant, pending final hearing, "from revealing any trade secrets of plaintiff, to any person, firm, partnership or corporation." The case is one relied upon by Yost and Souder, but we do not agree that the instant case is one wherein our decision should be the same.

Under Villalobos v. Holguin, 146 Tex. 474, 208 S.W.2d 871 (Tex.Sup., 1948) it is noted that necessity for preciseness of description as to acts enjoined is proper to be tested in light of the practicality of so doing. Informative on the subject are certain statements of the Supreme Court in writing upon the case, viz:

" . . . they will understand that when they pass out of those adjacent sections of the city which are used as places of residence by workers in the city into those sections which are used for farming, ranching or other essentially rural pursuits, they will be violating the injunction." (p. 875)

and:

"Here, however, respondents are doing a day-to-day business in the area involved and have full opportunity to know whether it is within the suburbs of El Paso. Since the language of Sec. 1(c) provides support for a judgment which respondents can reasonably understand and obey, we hold that the statute is not unconstitutional on the ground urged." (p. 875)

In the instant case, just as will the respondents to the application for injunction reasonably understand that they must obey the mandate of the court's decree when they might be moved to use of communicate matter necessary to be ascertained by reference to a compilation of information obtained from Justin Belt or H. J. Justin, they will likewise reasonably understand that they will be in disobedience of the court's decree should they be moved to use or disclose to any other "formula", "pattern", or "device" similarly obtained. Therefore, there has been compliance by the trial court of the mandate of T.R.C.P. 683, "Form and Scope of Injunction or Restraining Order", and no reversible error is apparent because of its form or content in the respect of which there is complaint.

On the question of whether any information, or any "formula" "pattern", or "device" which either Yost or Souder obtained in consequence of employment by Justin Belt or H. J. Justin actually constituted trade secrets or confidential information, we confess that we are impressed by the opinion of the court on the subject in Lamons Metal Gasket Co. v. Traylor, 361 S.W.2d 211 (Houston, Tex.Civ.App., 1962, writ ref., n. r. e.). Refer also to 28 A.L.R. 3d, p. 7, Annotation: "Former Employee's Duty, In Absence of Express Contract, Not to Solicit Former Employer's Customers or Otherwise Use His Knowledge of Customer Lists Acquired in Earlier Employment"; 165 A.L.R., p. 1453, Annotation: "Implied obligation of employee not to use trade secrets or confidential information for his own benefit or that of third persons after leaving the employment"; and 30 A.L.R.3d, p. 631, Annotation: "Employee's Duty, In Absence of Express Contract, Not to Disclose or Use in New Employment Special Skills or Techniques Acquired in Earlier Employment". See also Williston on Contracts, Revised Edition, Sec. 1025, "Employee's duty in regard to information acquired by him", in which it is said that " . . . the experience and information acquired in the course of the employment, except so far as confidentially communicated or acquired, may be turned by the employee to his own advantage after the termination of the employment". Annotation thereunder is to Restatement of the

Law, Agency, Sec. 396, "Using Confidential Information After Termination of Agency", Subdivision (b). In the Comment thereunder it is stated that such an employee is privileged to use methods and processes of the former employer which are but skillful variations of general processes known to the particular trade. An authority cited is 6 Texas Law Review, p. 502, "TRADE SECRETS—RIGHTS OF OWNER".

However, the *Traylor* case in the Houston Court of Civil Appeals was an appeal from the trial on the merits of a suit for declaratory judgment. By the manner in which the question is raised in the instant case we do not deem the question to have been presented by the appellants in manner entitling us to test the question as we would upon an appeal of a case tried on the merits. Their appeal from the denial of what was desired by their suit for declaratory relief has no relation to the question as shown by points of error germane to relief sought thereby. Therefore our detailed consideration of the question as the Houston Court considered it in *Traylor* would be something we would be under duty to perform only on an appeal from a decree of permanent injunction, not on an appeal from a decree of temporary injunction. On an appeal from a temporary injunction the question presented is the *status quo* and the presence or not of an abuse of discretion lodged in the trial court in its preservation pending a hearing of the case on the merits of the application for permanent injunction.

Our holding is, that for purposes of temporary injunction it would not constitute an abuse of discretion by the court to treat the Justin Companies' "formulas", "patterns" and "devices" as trade secrets or confidential information. There would be no abuse of discretion on the part of the trial court in granting temporary injunction where evidence, under pleadings, *tends to support it* upon a view thereof in the light most favorable to the successful party. In this case and under this rule we hold that the evidence does supply the necessary support. 31 Tex.Jur.2d, p. 89, "Injunctions", Sec. 37, "Abuse of discretion". Our holding is to the same effect relative to threatened use or disclosure by Yost or Souder.

In so far as the temporary injunction decree relates to a restraint of Joe Yost and Roger E. Souder from using or communicating trade secrets or confidential information, it is affirmed.

In so far as Roger E. Souder and Tony Lama Company, Inc., are by the order of the trial court enjoined from employing any person, the order is reformed so as to provide that "Roger E. Souder, Tony Lama Company, Inc., are hereby restrained from soliciting or encouraging any employee of Justin Belt Company, Inc., or H. J. Justin & Sons, Inc., to sever their employment and enter into the employment of Tony Lama Company, Inc., or agent or subsidiary thereof, or from employing any former employee of Justin Belt Company, Inc., or H. J. Justin & Sons, Inc., who shall have severed their employment from said companies as the result, in whole or in part, of the solicitation or encouragement of Roger E. Souder or Tony Lama Company, Inc., or of any person acting for or in their behalf." As so reformed judgment in such respect is affirmed.

In so far as the temporary injunction decree relates to and decrees that Roger E. Souder is restrained from engaging in the boot business or in the manufacture of boots, the same is reversed, with the temporary injunction vacated.

Judgment in connection with declaratory relief in connection with the contract is reversed with judgment rendered that the contract is void and therefore no declaratory judgment may be founded thereon.

LANGDON, J., not participating.