**JUSTIN BELT COMPANY, INC., et al., Petitioners,**

v.

**Joe YOST et al., Respondents.**

**No. B–3848.**

Supreme Court of Texas.

Nov. 28, 1973.

Rehearing Denied Jan. 16, 1974.

Dee J. Kelly, Fort Worth, for petitioners.

Law, Snakard, Brown & Gambill, Thomas H. Law and Samuel A. Denny, Fort Worth, Woodrow Bean, El Paso, H. G. Wells, Fort Worth, for respondents.

STEAKLEY, Justice.

It is the recognized rule that non-competition agreements in the employer-employee relationship are enforceable when made during employment. The initial question here is the enforceability or not, subject of course to the test of reasonableness as to time and area, and to judicial reformation if need be, of such an agreement fairly made in settlement of a pending suit by an employer against former employees. The suit here was for damages and injunctive relief for breach of confidential relations in the nature of a conspiratorial disclosure by the former employees of trade secrets to a competitor. There is the further question of whether the settlement agreement imposed unreasonable restraints of both time and area; and, if so, whether, as to both, the covenant is subject to reformation by the court in the exercise of its equitable powers. We answer each of these questions in the affirmative.

The following statement, taken primarily from Justin's brief and not questioned by Souder, et al., recounts the background and current status of the case.

Petitioners are Justin Belt Company, Inc., and H. J. Justin and Sons, Inc., collectively referred to as Justin. Respondents are Roger Souder, Joe Yost, Tony Lama Company, Inc., and Tony Lama Leather Products, Inc., referred to as Souder, Yost and Lama.

In January, 1970, Justin filed suit against Yost and Souder for damages for conspiracy and breach of confidential relations and requested injunctive relief, both temporary and permanent. Yost was employed by Justin Belt Company, Inc. from August 19, 1963, to December 12, 1969, when he resigned his position as general manager. Souder was employed by H. J. Justin & Sons, Inc. from January 1, 1940, until his resignation on December 30, 1969. Souder had served as general manager for H. J. Justin & Sons, Inc. for several years. Justin alleged that Yost and Souder left key positions with Justin with the plan and purpose of forming a company in Fort Worth, Texas, to manufacture belts and boots in competition with Justin and had actually entered into an agreement with Justin's principal competitor, Tony Lama Company, Inc. of El Paso while still employed by Justin.

Justin further alleged that Yost and Souder threatened to proselyte Justin's employees to employ them in competition with Justin and to make available to Lama trade secrets, customer lists and other confidential information concerning Justin's business; also, it was alleged that such actions on the part of Yost and Souder constituted illegal and unlawful competition. Justin sought to restrain and enjoin Yost and Souder from using confidential information and trade secrets obtained from Justin and from manufacturing belts and boots in competition with Justin.

Under date of February 16, 1970, Justin and Yost and Souder, joined by Tony Lama Company, Inc. as a third party, settled this suit. A final judgment was thereafter entered, dismissing Justin's suit with prejudice. The settlement agreement is set out in full in the margin.[1]

1. WHEREAS, JUSTIN BELT COMPANY, INC. and H. J. JUSTIN & SONS, INC.

have instituted that certain cause of action styled JUSTIN BELT COMPANY, INC.,

On February 22, 1972, the suit at hand was filed by Souder and Yost. They sought a declaratory judgment that the settlement agreement was unenforceable; and, in the alternative, that the agreement be reformed to prohibit Souder and Yost from engaging in the boot business or in the manufacture thereof for a period not longer than two years. Justin filed a cross-action alleging breach of the settlement agreement and invoked the equitable powers of the trial court to issue a temporary injunction enjoining Souder, et al, from violating its terms and conditions, from jointly engaging in the boot business or in the manufacture of boots in competition with Justin, and for damages. After hearing evidence, the trial court reformed paragraph I of the settlement agreement to provide that Respondents Yost and Souder

should "not engage in the bootmaking business for a ,period of seven years from February 16, 1970, within the continental United States west of the Mississippi River" and granted appropriate injunctive relief to Justin. The Court of Civil Appeals reversed the judgment as to this, ruling the settlement agreement void, and not subject to reformation. 488 S.W.2d 850.

■ In other situations involving noncompetition covenants, Texas courts have stated the rule that contracts which are in reasonable restraint of trade must be ancillary to and in support of another contract. Thus, a contract between two insurance companies to limit their agent's compensation and not employ agents of non-complying companies was not one contract in support of another, but merely an independent

ET AL VS. JOE YOST AND ROGER E. SOUDER, Cause No. 153-48-70, in the 153rd Judicial District Court of Tarrant County, Texas; and

WHEREAS, the parties to said suit, being the same parties to this Agreement, do now wish and desire to compromise and settle such litigation by the execution of this Agreement;

NOW, THEREFORE, in consideration of the premises, and the entry of a judgment of dismissal with prejudice in the above entitled and numbered cause, the parties hereby covenant and agree as follows:

I.

JOE YOST and ROGER E. SOUDER, from and after the date of this Agreement, will not in any manner engage in the boot business or in the manufacture thereof.

II.

JOE YOST and ROGER E. SOUDER will not, from and after the date of this Agreement, use or communicate any confidential information or trade secret obtained from or by virtue of their employment with JUSTIN BELT COMPANY, INC. and H. J. JUSTIN & SONS, INC.

III.

JOE YOST and ROGER E. SOUDER will not copy, or cause to be copied, or permit the copying by anyone in their employ, of any belts, or belt samples, which shall have been manufactured by the JUSTIN BELT COMPANY, INC. of Fort Worth, Texas.

IV.

JOE YOST and ROGER E. SOUDER will not communicate any confidential information which they obtained during he course of their employment with JUSTIN BELT COMPANY, INC. so as to be engaged in unfair trade

practice with the said JUSTIN BELT COMPANY, INC.

V.

JOE YOST, ROGER E. SOUDER, and TONY LAMA COMPANY, INC. will not, from and after the date of this Agreement, employ any person who shall be employed by either JUSTIN BELT COMPANY, INC. or H. J. JUSTIN & SONS, INC.

VI.

JOE YOST and ROGER E. SOUDER will not, from and after the date of this Agreement, criticize or impugn the JUSTIN BELT COMPANY, INC. or H. J. JUSTIN & SONS, INC., or any of their products, to any person, and will instruct their employees to avoid such similar conduct.

VII.

JOE YOST and ROGER E. SOUDER will not use any special equipment and/or techniques which shall have been developed in the plants operated by JUSTIN BELT COMPANY, INC. and H. J. JUSTIN & SONS, INC., but this Agreement shall not prohibit Defendants from adopting such processes as are commonly known and used in the manufacture and making of belts.

VIII.

JOE YOST and ROGER E. SOUDER will not, from and after the date of this Agreement, engage in any unfair trade practice against JUSTIN BELT COMPANY, INC., and H. J. JUSTIN & SONS, INC.

IX.

JOE YOST and ROGER E. SOUDER further agree to pay all court costs in the above styled and numbered cause, including cost of all depositions taken in connection therewith.

agreement to limit competition; as such, it was unenforceable. Potomac Fire Insurance Co. v. State, 18 S.W.2d 929 (Tex.Civ. App.1929, writ ref'd).

A step away from Potomac is Chenault v. Otis Engineering Corporation, 423 S.W. 2d 377 (Tex.Civ.App.1967, writ ref'd. n. r. e.) In *Chenault,* the court upheld a noncompetition agreement between an employer and employee; the employee was not only on leave of absence from the employer, but was in fact in the employ of another at the time of execution of the agreement and for several months thereafter. The court reasoned that in light of the leave of absence agreement, the restraining covenant not to compete was nonetheless ancillary to and connected with the former employment.

Beyond this, and to the point here, is Novelty Bias Binding Company v. Shevrin, 342 Mass. 714, 175 N.E.2d 374 (1961). The employment relationship had terminated because of embezzlements of large sums of money by the employee. Criminal proceedings against him were thereafter instituted, and an agreement to make restitution was later effected in which the former employee agreed not to disclose secret knowledge or confidential information gained during his employment and to refrain from competition. The suit was by the employer to enjoin violation of the agreement by the former employee. The employee contended, as Souder and Yost claim here, that the restrictive covenant was illegal and unenforceable because it was not inserted in a contract for personal service and was not ancillary to an existing employment. The Massachusetts court enforced the covenant upon reasoning with which we agree:

. . . The covenant entered into was at least ancillary to a permissible transaction (see Williston, Contracts [Rev. ed.] § 1636), namely, an agreement for restitution for the thefts committed during employment . . . . The defendant doubtless desired to avoid imprisonment; the plaintiffs obviously desired that the good will of the businesses be protected from one who at liberty could do them immediate and grievous harm. In the circumstances disclosed, we think considerations of public policy, equity and fair dealing favor enforcement of the covenant if it is otherwise reasonable.

The language of Williston, referred to above, is as follows:

A rule of the early decisions, still operative, that consideration must be given for a restrictive promise, even though it is under seal, accords with the broader principle that the restrictive promise must be ancillary to some permissible transaction. 14 Williston on Contracts § 1636 at 102 (3d ed. 1972)

■ The noncompetition covenant at issue was ancillary to an agreement that settled the dispute between Justin and his former employees and accomplished a termination of the pending litigation. This was no doubt brought about by the desire of Souder and Yost, and Lama as well, to get out from under the pending suit; and Justin, of course, wanted protection for its trade secrets and employees. There is no claim that the agreement was not reached in good faith and in fairness to the parties. Not only was the covenant ancillary to a permissible transaction, *Novelty Bias,* Williston *supra*; it was ancillary to an agreement highly favored by the courts. *See,* Houston and T. C. R. Co. v. McCarty, 94 Tex. 298, 60 S.W. 429 (1901); Gilliam v. Alford, 69 Tex. 267, 6 S.W. 757 (1887); Camoron v. Thurmond, 56 Tex. 22 (1881); Texas Eastern Transmission Corp. v. Federal Trade Commission, 306 F.2d 345 (5th Cir. 1962).

Further, the protection of Justin's trade secrets was the purpose of its suit against Souder and Yost which was settled by the compromise agreement. The covenant in question was related to the prior employment of Souder and Yost by Justin and its

purpose was to restrain Souder and Yost from disclosing trade secrets to Lama, a principal competitor of Justin, and from further depredating their former employer by luring away its employees to work in competition with Justin. In Hyde Corporation v. Huffines, 185 Tex. 566, 314 S.W. 2d 763 (1958), we wrote at considerable length concerning breach of confidence respecting trade secrets. The words of Mr. Justice Holmes there quoted [2] are aptly descriptive here:

"The word 'property' as applied to trademarks and trade secrets is an unanalyzed expression of certain secondary consequences of the primary fact that the law makes some rudimentary requirements of good faith. Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied, but the confidence cannot be. Therefore the starting point for the present matter is not property or due process of law, but that the defendant stood in confidential relations with the plaintiffs, or one of them. These have given place to hostility, and the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations. If there is any disadvantage in the fact that he knew the plaintiffs' secrets, he must take the burden with the good."

█ As noted, Souder and Yost covenanted in the settlement agreement that they would "not in any manner engage in the boot business or in the manufacture thereof." The trial court found such an agreed restraint unreasonable and we agree. See Weatherford Oil Tool Co. v. Campbell, 161 Tex. 310, 340 S.W.2d 950 (1960) and Wissman v. Boucher, 150 Tex. 326, 240 S.W.2d 278 (1951). The trial court heard evidence and reformed the ob-

ligation to a period of seven years and to a geographical area of the continental United States west of the Mississippi River. Souder, Yost and Lama do not attack the court decreed time and area limitations as unreasonable; they say that the settlement agreement was void and unenforceable and that the reformation was beyond the equitable powers of the court, because the agreement contained no limitations as to either time or space.

█ This Court has recognized that restraints of trade unlimited as to both time and space are generally held to be unreasonable. *Wissman, supra.* In *Weatherford,* we observed that the period of time during which the restraint is to last and the territory that is included are important factors to be considered in determining the reasonableness of the agreement. This is not to say that unreasonable covenants are void as to either or both, and beyond reformation in equity; it is to say that they are not enforceable beyond a time or area considered reasonable by the Court. We further commented in *Weatherford* that it can no longer be said that a covenant not to compete is void and unenforceable simply because it is not reasonably limited as to either time or area, and that a court of equity will nevertheless enforce the contract by granting an injunction restraining competition for a time and within an area that are reasonable under the circumstances. We have not held that such is the case as to either time or area, but not as to both; and we perceive no sound logic for such a distinction. Indeed, this Court approved the opinion in Spinks v. Riebold, 310 S.W.2d 668 (Tex.Civ.App.1958, writ ref'd) wherein it was written that contracts of employment containing restrictive covenants will not be declared void because they are unreasonable as to time, or as to the extent of territory covered, or unreasonable as to both time and territory. The contract is unenforceable in either in-

2. E. I. DuPont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 576, 61 L.Ed. 1016 (1917).

stance, whether either or both, in the absence of reformation; and the result in each instance is the enforcement of restraints found by the Court upon evidence to be reasonable.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Dissenting opinion by SAM D. JOHNSON, J., in which GREENHILL, C. J., and McGEE, J., join.

WALKER, J., not sitting.

SAM D. JOHNSON, Justice (dissenting).

The dissent respectfully submits that the court of civil appeals correctly ruled the noncompetition covenant invalid.

To grasp the effect of the majority's holding, the circumstances of the parties' relationship to each other must be understood. Joe Yost worked as an employee of Justin in the belt business and Roger Souder worked as an employee of Justin in the boot business. Each worked in a managerial capacity for an extended number of years. Neither employee at any time contemporaneously with or during the period of his employment executed any kind or character of noncompetition agreement or contract. The record does not reveal that either employee was ever requested to do so; it does not in fact appear that such action was ever discussed, contemplated or considered. At different times during the month of December 1969, both employees resigned and both thereafter became employees of Tony Lama.

Thereafter, Justin filed suit against Yost and Souder, alleging that they had enticed away Justin employees, had disclosed trade secrets to Lama, and prayed for damages and a noncompetition injunction. It is clear that under no authority of any jurisdiction would Justin have been entitled to obtain such a noncompetition injunction at this point.

During the pendency of that first suit, Justin, Yost, Souder and Lama entered into the agreement set forth in the opinion of the majority. The trial court's judgment there made no reference to such agreement, and Justin's suit was dismissed with prejudice.

Some time thereafter the instant case was filed and tried. Here the trial court has taken two actions. First, the noncompetition covenant, wholly unlimited as to both time and space, was reformed as to both. Second, the trial court issued an injunction enforcing the entire agreement as reformed, including the noncompetition covenant.

The true question is, therefore, whether a settlement agreement containing a noncompetition covenant may be enforced when there was never, at any time before, during or contemporaneously with employment, any written covenant against competition. The majority answers this question in the affirmative, relying on a single erroneously decided case. Novelty Bias Binding Company v. Shevrin, 342 Mass. 714, 175 N.E.2d 374 (1961). That case and the instant holding, it is submitted, are contrary to the otherwise unanimous and consistent weight of authority.

According to the Restatement, Contracts § 515, entitled When a Restraint of Trade Is Unreasonable, this particular covenant is an unreasonable restraint of trade. "A restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it . . . is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-will or other subject of property or to an *existing employment or contract of employment.*" [Emphasis added.] *See also* Annot., 3 A.L.R. 250: Contracts to keep out of a particular business as an unlawful restraint of trade, when independent of

any other contract, as supplemented in Annot., 91 A.L.R. 980. The courts are rightfully chary of employee noncompetition agreements because of the potential harm to both the public and the employee. 14 Williston on Contracts §§ 1635, 1636, 1643 (3d ed. 1972). "Bargains to refrain from competition not ancillary to a sale or existing employment are generally deemed to be unreasonable and invalid." 14 Williston, *supra,* at 144, 145, Promises Ancillary to Contracts of Employment. [Emphasis added.] Section 1636, at 96, The Restraint by Agreement must be reasonable, asserts that the purpose of a restrictive covenant is almost always to enhance the promisee's business by limiting competition from former employees.

> "This purpose has been regarded as so inimical to the public interest that generally it is only in cases where the restrictive promise is ancillary to some other transaction that its validity has been upheld."

Texas courts have long and consistently recognized this rule. Almost half a century ago it was stated that "contracts which are recognized as being in reasonable restraint of trade must be ancillary to and in support of another contract." Potomac Fire Ins. Co. v. State, 18 S.W.2d 929, 934 (Tex.Civ.App.—Austin 1929, writ ref'd). Two Texas cases dealing with noncompetition contracts, one of which is cited by the majority, are significant. In Chenault v. Otis Engineering Corporation, 423 S.W.2d 377 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.), the employee signed a noncompetition agreement pursuant to a leave of absence agreement. The court, mindful of the rule, carefully distinguished between termination of employment and a leave of absence. The court went to considerable pains to show this man was still an employee and upheld the agreement as ancillary to his existing term of employment.

In Brooks Gas Corporation v. Sinclair Oil & Gas Co., 408 S.W.2d 747 (Tex.Civ. App.—Houston 1966, writ ref'd n. r. e.), the plaintiff gas processing plant revealed trade secrets to a competitor interested in buying out the plant in return for an agreement not to reveal those secrets and not to extend into plaintiff's territory. The sale was never consummated and the competitor later extended into plaintiff's territory in violation of the agreement. The trial court denied a temporary injunction and the court of civil appeals affirmed because the agreement was not "ancillary either to a contract for the transfer of good will or other subject or property or to an existing employment or contract of employment." 408 S.W.2d at 753. The plaintiff argued that the handing over of trade secrets constituted a bailment and the noncompetition agreement was ancillary to this bailment, but the court of civil appeals rejected this proposed exception to the terms of § 515 of the Restatement, Contracts.

Justin asserts that to recognize the "exceptions" in § 515(e) of the Restatement as exclusive commits the court to an inflexible and narrow approach to public policy. Section 515 does not, however, delineate exceptions to the general rule that contracts in restraint of trade are void; rather, such section outlines specific instances in which these contracts are illegal. The commentary on clause (a) says, "[t]he rules stated in this Section cover cases where the bargain is illegal, but no implication is intended that all bargains that do not fall within these rules are legal." Restatement, Contracts, at 989. Novelty Bias Binding Company v. Shevrin, *supra,* relied on by the majority, rests also on an erroneous interpretation of the Restatement. Comment a of § 515 does speak of an "open territory" between § 515 and § 516 of the Restatement. However, the *Novelty Bias* court overlooked the fact that § 515 explicitly outlaws employee noncompetition covenants not ancillary to existing employ-

ment. Like *Novelty Bias,* the instant case falls squarely within § 515, not between § 515 and § 516.

Justin urges the creation of an exception to § 515(e) for settlement agreements. It is this, a new and novel exception, which the majority has apparently accepted. Undoubtedly settlement agreements are favored and the courts will not lightly disturb them. Courts, however, and particularly Texas courts, will not and should not enforce portions of settlement agreements which are against public policy. Johnson v. U. S. Industries, Inc., 469 S.W.2d 652 (Tex.Civ.App.—Eastland 1971, no writ).

"A contract of compromise is unenforceable and may be disregarded where it is illegal, is against public policy or in contravention of statute or the policy thereof, . . . " 15A C.J.S. Compromise and Settlement § 38, at 262 (1967).

Justin also argues that the noncompetition agreement is necessary to protect its trade secrets and that the restraint of trade cases are not applicable in the trade secret context. However, Justin does not distinguish between injunctions to prevent the disclosure and use of trade secrets and injunctions to prohibit competition. The skills an employee acquires on the job, as distinguished from trade secrets, belong to the employee and in the absence of a valid noncompetition agreement the employee has the right to use these skills. Ventura Manufacturing Company v. Locke, 454 S. W.2d 431 (Tex.Civ.App.—San Antonio 1970, no writ); 56 C.J.S. Master and Servant § 72 (1948). "Where an employee will acquire by virtue of his employment trade secrets, the law permits greater restriction to be imposed *by contract* on the employee than in other contracts of employment . . . . " 14 Williston § 1643, *supra.* [Emphasis added.]

It must be noted that equity here is not entirely on the side of Justin. As stated, the original suit could not have yielded a noncompetition injunction since neither Yost nor Souder executed an agreement before or during their employment with Justin. The temporary injunctions affirmed by the court of civil appeals already protect the trade secrets of Justin and shield Justin from the enticement of its employees. It must be emphasized this is the maximum injunctive relief Justin could have obtained in its original suit. Nevertheless, the majority opinion focuses on the need to protect Justin's trade secrets but nowhere in its opinion are such trade secrets enumerated. The record gives the majority no assistance for the trial court has made no final determination on the existence of trade secrets. The record is quite clear, however, that Yost and Souder have both worked for Lama for some time now and any trade secrets (if they exist) employment might reveal have long since been disclosed. The proper remedies now are an injunction to prohibit the use of trade secrets, if any, already disclosed, an injunction against further disclosure, and damages for any injury Justin has suffered. A noncompetition covenant in these circumstances does not protect trade secrets. Its true purpose and effect, as pointed to by 14 Williston, *supra,* is to eliminate competition and the covenant is thus an unjustified restraint of trade. Any time an employee leaves one employer to work for a competitor and, under threat of a suit, signs a noncompetition agreement, the same would be true. Here trade secrets are not protected; rather, the covenant's oppressive effect is to improperly limit competition.

The Restatement, it is submitted, has struck a proper balance in creating an exception to the general prohibition against contracts in restraint of trade for noncompetition covenants ancillary to *existing* employment. An employer who solicits such an agreement at the outset of employment or while the employee is still employed is taking reasonable measures to protect still undisclosed trade secrets; the same cannot

be said for covenants signed after the employee has worked for a competitor.

One last aspect of the majority opinion must be noted. Employee noncompetition agreements, even those signed pursuant to existing employment, are not per se valid. In delineating what is a reasonable restraint, 14 Williston § 1636, *supra,* focuses on three considerations:

"1. The question whether the promise is broader than is necessary for the protection of the covenantee in some legitimate interest;

"2. The effect of the promise or agreement upon the covenantor, and

"3. The effect of the promise or agreement upon the public welfare or common good."

To the extent that the noncompetition feature of the settlement agreement is circumscribed, the majority addresses the second consideration. It is to be noted that no other consideration is given to the ·effect upon the covenantor, however, and the instant case is precedent for substantial harm to employees. An employee, almost invariably in a position of economic imbalance with his former employer, may sign a settlement agreement containing a restrictive covenant to avoid litigation, regardless of the merits of the former employer's suit. The first consideration, the "legitimate interest" of Justin, is not shown to be protected by a noncompetition agreement, however. The third consideration, the public interest, is wholly ignored. As indicated, the true effect of enforcing the settlement agreement is to limit competition, and what should be a paramount consideration, the public interest, is disserved by its enforcement.

The dissent would affirm the court of civil appeals.

GREENHILL, C. J., and McGEE, J., join in this dissent.