Elmer THOMPSON and Dorothy
Thompson, Appellants,

v.

John W. HENDERSON d/b/a John
W. Henderson Trucking Co.,
Appellee.

Elmer Thompson and Dorothy
Thompson, Appellants,

v.

Harco National Insurance
Company, Appellee.

No. 05–00–00679–CV.

Court of Appeals of Texas,
Dallas.

April 23, 2001.

284

Carl A. Generes, Law Office of Carl A. Generes, Dallas, Bertran T. Bader, III, Bertran T. Bader, III, P.C., Dallas, for Appellant.

John C. Tollefson, Goins Underkofler, Crawford & Langdon, Dallas, Shawn Malcolm Mccaskill, Julia F. Pendery, Cowles & Thompson, Dallas, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and ROACH.

## OPINION

Opinion By Justice ROACH.

In this consolidated appeal, appellants Elmer and Dorothy Thompson challenge the trial court's judgment granting a bill of review and vacating a March 22, 1993 default judgment against appellee John W. Henderson d/b/a John W. Henderson Trucking Company. In twelve points of error, the Thompsons complain the evidence is legally insufficient to support bill of review relief and the trial court erred in allowing inadmissible evidence. We conclude there is no evidence to support the jury's finding that Henderson used due diligence to avail himself of adequate legal remedies to set aside the default judgment. Accordingly, we reverse the trial court's judgment granting the bill of review, vacating the March 22, 1993 default judgment, and ordering appellants take nothing on their claims against appellee Henderson. We render judgment that the bill of review is denied and reinstate the final default judgment order of March 22, 1993 as the final judgment in this cause.

Further, the Thompsons appeal the trial court's dismissal of their writ of garnishment action against the insurer, Harco National Insurance Company (Harco). Because of our disposition of the bill of review, we reverse the trial court's dismissal order and remand issues related to the writ of garnishment action for further proceedings.

This case has a long and complicated history. We will recount only those facts necessary to understand the underlying issues and resolve the dispositive issue in this appeal. Elmer Thompson was involved in an automobile accident with a truck. In October 1991, Thompson and his wife, Dorothy, sued John W. Henderson d/b/a John W. Henderson Trucking Company, apparently believing Henderson owned, operated, or leased the truck. Henderson immediately forwarded the suit papers to his insurance agent, who forwarded them to Dave Leary, a litigation specialist/adjustor for Harco, Henderson's insurance carrier. The agent told Leary that Henderson knew nothing about the

accident and did not own the truck. In February 1992, Leary contacted the Thompsons' attorney, Scott Richard, and told him he had information that Henderson did not own the truck. Richard told Leary to send him documentation to that effect, and Richard agreed not to require Harco to file an answer on Henderson's behalf or make an appearance until he had proper information that brought Henderson into the case. Ten months later, on December 15, 1992, Leary sent the documents he believed established Henderson was not a proper party.

On April 12, 1993, Leary wrote Richard a short letter to determine whether he needed to file an answer. On April 16, 1993, Leary received a letter from Richard. The letter, dated April 15, 1993, stated, "A Default Judgment was taken against your insured, a copy of which is enclosed. I will hold off on executing against Mr. Henderson if you are able to obtain counsel within 14 days." Attached was a copy of the default judgment signed by Judge Joe Brown and dated March 22, 1993. Leary testified he believed the default judgment was only a proposed order because it contained blanks for two other dates that were not filled in.[1] He did nothing with the order until the morning of April 21, 1993, the day the default judgment was to become final. On that day, Leary contacted attorney Jess C. Rickman III. The two had a brief conversation in which Leary told Rickman he had a lawsuit that he had been working on with the plaintiffs' attorney and that he had an extension until the following day to file an answer. Leary said he would forward the papers and asked Rickman to file an answer on the insured's behalf.

Rickman, who planned to be out of the office most of that day, alerted associate Kim Meaders to the case and instructed her to prepare a general denial when the petition arrived. That afternoon, Meaders returned from a deposition and obtained the papers. After reading them, she realized a default judgment had been rendered. She contacted the court to confirm the default judgment and also contacted Leary and explained that a default judgment had been taken. Leary instructed her not to do anything that day and to wait until Rickman returned to the office the following day. According to Leary, Meaders did not suggest there was any urgency in the matter. Meaders could not "recall" whether she discussed with Leary that "something" needed to be done that day.

When Rickman returned to the office the following day, he met with Meaders, instructed her to contact Richard, and draft a motion for new trial. Richard agreed to the motion for new trial; thus, on that day, which was the thirty-first day after judgment, Rickman filed an agreed motion for new trial to set aside the default judgment. After the agreed motion was filed, Meaders received a call from an irate Mrs. Thompson, who said she did not agree, and had never agreed, to the motion. (Meaders, who was representing Henderson, explained to Mrs. Thompson that she could not discuss the case with her.) The next day, Meaders received formal notice that Richard was withdrawing his agreement to the motion. Thereafter, Meaders supplemented the motion for new trial "with the proof necessary to sustain a controverted motion for new trial." On May 28, 1993, the trial court granted the untimely motion for new trial, and the default judgment was set aside. At that

---

1. Specifically, the "Order for Final Default Judgment" contained a blank for the date of the default judgment hearing and a blank on the second page for the date the order was entered by the clerk of the court. Neither blank was filled in.

hearing, Richard withdrew as the Thompsons' attorney.

The case proceeded for the next two years until the Thompsons' new attorneys realized the original motion for new trial was not timely filed and the trial judge acted outside his plenary jurisdiction in granting it. The Thompsons moved to strike the judge's ruling granting the new trial and also filed a separate garnishment action against Harco. A visiting judge denied the Thompsons' motion, and the case ultimately ended up in this Court on an appeal in the writ of garnishment action. In the appeal, this Court essentially concluded the order granting the motion for new trial was void and the March 22, 1993 default judgment had become final on April 21, 1993. *See Thompson v. Harco Nat'l Ins. Co.*, 997 S.W.2d 607, 622–23 (Tex.App.—Dallas 1998, pet. denied).

While the appeal was pending, Henderson filed a bill of review petition. Once the appellate opinion issued, the parties proceeded on the bill of review. A jury was impaneled to consider the bill of review question. The parties could not agree on the proper standard that the bill

of review plaintiff must show: specifically, whether Henderson had to show that he was free of negligence. The trial court submitted both standards to the jury,[2] as well as a due diligence question. The jury answered all questions in Henderson's favor. Thereafter, the Thompsons filed a motion for judgment notwithstanding the verdict, arguing there was no evidence to support affirmative answers to any of the three questions submitted. The trial court overruled the Thompsons' motion, set aside the March 22, 1993 default judgment, and ordered a new trial.

At the new trial, the Thompsons, believing the bill of review was improperly granted, declined to present any evidence on liability or damages. Thereafter, the trial court ordered the Thompsons take nothing by their claims against Henderson. Additionally, in a separately numbered case, the trial court dismissed the garnishment action filed against Harco and taxed costs against the Thompsons. This appeal ensued.[3]

Before turning to the merits of the appeal, we first address Henderson's conten-

---

**2.** Question number one asked:

Do you find that Henderson has satisfied each of the following elements?
1. Henderson's failure to file an answer was not intentional or the result of conscious indifference, but was due to accident or mistake;
2. Henderson or his agent was misled or prevented from filing a motion for new trial by misinformation by an officer of the court, acting within his or her official duties, and this information was given to Henderson or his agent within the 30-day period for filing the motion for new trial so as to bring about the failure to file a motion for new trial in time; and
3. the granting of the bill of review will not cause 'injury' to the Thompsons.
You are instructed that lawyers are officers of the court.
You are instructed that 'misinformation by an officer of the Court' includes a failure to

provide the requisite postcard notice of the entry of the default judgment.
You are further instructed that 'injury' does not mean the Thompsons' loss of a favorable judgment. Rather, it means the sort of injury that would disadvantage the plaintiff in presenting the merits of the case at the new trial.

Question number two asked:
Do you find that Henderson has satisfied each of the following elements?
1. He was prevented from making a meritorious defense by the fraud, accident or wrongful act of the Thompsons or their attorney **or** as a result of official mistake;
2. That was unmixed with any fault or 'negligence' of Henderson or his agents.

**3.** The Thompsons appealed both orders, and the cases were consolidated on appeal.

tion that the Thompsons waived their right to review by failing to attack the take-nothing liability judgment. It appears his argument is that even if the Thompsons prevailed on their bill of review complaints, the take-nothing judgment remains in place because it was not attacked. Henderson's analysis is without merit. If Henderson was not entitled to prevail on the bill of review, any liability judgment in his favor following that proceeding would likewise be in error. Accordingly, the Thompsons need not challenge the liability judgment to preserve their complaints on the bill of review. We now turn to the merits of this appeal.

In points of error four and five, the Thompsons argue the trial court erred in overruling their motion for judgment notwithstanding the verdict on the bill of review because there is no evidence that Henderson exercised due diligence in pursuing available legal remedies to set aside the default judgment. Specifically, they contend Henderson could have filed, but did not file, (1) a *timely* motion for new trial, (2) a Texas Rule of Civil Procedure 306a motion to extend the trial court's plenary power, or (3) a writ of error (now called a "restricted appeal").

When a party who did not have the burden of proof at trial requests a judgment notwithstanding the verdict, it must show there is no evidence upon which the jury could have relied for its findings. *See Lone Star Ford, Inc. v. McCormick*, 838 S.W.2d 734, 738 (Tex.App.—Houston [1st Dist.] 1992, writ denied). In reviewing the trial court's denial of a motion for judgment notwithstanding the verdict, we review the evidence in the light most favorable to the jury findings, considering only the evidence and inferences that support

them, and disregarding all evidence and inferences to the contrary. *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986). If there is more than a scintilla of evidence to support the findings, the motion for judgment notwithstanding the verdict was properly denied. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227–28 (Tex.1990).

A bill of review is an independent action to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (per curiam). Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review. *Id.* Because it is fundamentally important that some finality be accorded to judgments, a bill of review seeking relief from an otherwise final judgment is scrutinized by the courts "with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted." *Montgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex.1984) (quoting *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 998 (1950)); *see McRoberts v. Ryals*, 861 S.W.2d 253, 256 (Tex.App.—Dallas 1990), *rev'd on other grounds*, 863 S.W.2d 450 (Tex.1993).

To succeed in a bill of review, the petitioner must show he (1) has a meritorious defense to the claim alleged to support the judgment, (2) was prevented from making that defense because of the fraud, accident, or wrongful act of the opposing party or because of an official mistake, and (3) was not at fault or negligent. *See Wembley*, 11 S.W.3d at 927; *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex.1998); *McRoberts*, 861 S.W.2d at 256.[4] Further,

---

**4.** At trial and on appeal, Henderson argued that he should be held to the lesser requirements of *Hanks v. Rosser*, 378 S.W.2d 31, 35

(Tex.1964), where the Supreme Court applied a less onerous standard to a defendant whose failure to file a timely motion for new trial

bill of review relief is available only if a party has exercised due diligence in pursuing all available legal remedies against a former judgment. *Wembley,* 11 S.W.3d at 927. If legal remedies were available but ignored, relief by equitable bill of review is not available. *Id.* This applies even if the failure results from the negligence or mistake of a party's agent. *See Lawrence v. Lawrence,* 911 S.W.2d 443, 448 (Tex. App.—Texarkana 1995, writ denied) (citing *Brownson v. Reynolds,* 77 Tex. 254, 13 S.W. 986, 987 (1890)).

In this case, the trial court submitted the following question to the jury:

> Do you find by a preponderance of the evidence that Henderson exercised due diligence to avail himself of available legal remedies to set aside the Thompsons' default judgment before filing this proceeding for an equitable bill of review?

> You are instructed that as used in this charge the term **"due diligence"** means that measure of care, prudence and application of effort and skill exercised by an individual in his particular speciality.

The jury answered "Yes." Accordingly, we assess the Thompsons' argument that no evidence supports the jury's finding that Henderson exercised due diligence to avail himself of available legal remedies in light of the jury charge. We must therefore consider whether Henderson offered any evidence from which the jury could find, as the trial court instructed, that Henderson

exercised "that measure of care, prudence and application of effort and skill exercised by an individual in his particular specialty" to avail himself of available legal remedies. In this case, we focus on the actions of Henderson's agents, Leary, Rickman, and Meaders.[5]

■ The evidence established that Leary's "particular specialty" was insurance claims. He testified he was a litigation specialist/adjustor with Harco. As such, his responsibilities involved reviewing new lawsuits for coverage and determining the scope of the defense and whether the case was a good candidate for mediation or arbitration. At the time of trial, he had twenty-five years' experience as a claims adjustor; in 1993, when the default judgment was taken, Leary had nineteen to twenty years' experience. He testified he knew what a "default judgment" was and also understood what it meant to execute a judgment. Nevertheless, he testified that after reviewing Richard's April 15th letter and copy of the default judgment, he misunderstood the "intent" of the letter to mean that a default judgment *would* be taken in the future and that he had time to file an answer. Leary took no action until April 21, five days after receiving notice of the default judgment and on the day the default judgment became final. For the first time, he contacted a lawyer, Rickman, and told him he needed to get an answer filed

---

was induced by misinformation from the clerk. Henderson argues the clerk's failure to notify him of the default judgment was misinformation entitling him to the *Hanks* standard. While we agree that the clerk's failure to provide notice is equivalent to "misinformation," we disagree *Hanks* and its progeny apply here. Henderson was not prevented from filing a timely motion for new trial because of the clerk's failure to send notice. Henderson received notice within the time for filing a motion for new trial. Thus, the

clerk's failure is of no moment in this appeal. Furthermore, as cited above, the Texas Supreme Court has consistently set forth the standard of review on a bill of review to require a bill of review plaintiff to show freedom from fault or negligence.

5. The trial court, in its charge, also instructed the jury that Henderson was bound by the acts of his agents, "such as attorneys and insurance adjustors."

in a lawsuit. On that day, Leary forwarded the letter and copy of the judgment to Rickman. When asked at trial if there was anything to prevent him from dealing with the letter and attached judgment on April 16, 17, 18, 19, or 20, Leary responded, "I have no idea."

Considering the evidence in the light most favorable to the jury's finding, we conclude a prudent litigation specialist/adjustor would not have failed to act, in some manner, on the notice for five days, irrespective of his belief that a default judgment had not been taken and that the letter and order referred to some future event. The letter specifically advised Leary that "[a] default judgment was taken against your insured," yet Leary did nothing and could not account at trial for why he did nothing. When he did contact counsel, he did not tell Rickman anything about a default judgment; rather, he told Rickman an answer needed to be filed. He acknowledged there was nothing in Richard's letter to suggest that an answer was due. Contrary to Leary's conduct, we believe a prudent litigation specialist/adjustor, aware of what a default judgment is and its consequences, would have at least made prompt inquiry to determine what he had before him. Leary's neglect of the matter for five crucial days simply cannot constitute "due diligence." But, even if Leary was diligent in getting the matter to an attorney for action, there is no evidence that the attorneys acted diligently in availing themselves of adequate legal remedies to set aside the default judgment.

When Leary finally faxed the letter and default judgment to Rickman's office on the thirtieth day, associate Meaders was the first to see it. Meaders, who had been a licensed attorney for two years, saw the judgment late that afternoon and was surprised—she had been expecting a petition

and instead found a default judgment. Meaders called Leary to make sure it was the right case and explained that a default judgment had been taken. Leary told Meaders to take no action until he could talk to Rickman the following day. Meaders could not recall whether she told Leary he needed to do something that day to set aside the default judgment, but Leary testified she did not. On that day, the default judgment became final, and the trial court's plenary power expired.

Nevertheless, when Rickman returned to the office the next day, he instructed Meaders to prepare a motion for new trial. The motion was agreed to by Richard. Rickman, who had been practicing law for more than sixteen years at the time, signed the motion. The motion specifically provided: "This motion is presented within the time allowed by law on motions for new trial, the default judgment in this case having been rendered on the 22nd day of March, 1993."

Meaders testified at trial she did not know if, on April 21, 1993, she knew whether a motion for new trial had to be filed within thirty days of the date of judgment. She said she did not recall whether there were any discussions regarding the timeliness of the motion. She could not recall when she first became aware that the motion was not timely. Once the agreement to the motion was withdrawn, Meaders said she drafted a supplemental motion and provided affidavits to meet the *Craddock*[6] standard. That motion also contained language that it was "presented within the time allowed by law on motions for new trial."

Similarly, Rickman testified he could not recall whether he knew, at the time the motion was filed, whether it was timely. However, when asked if a possible "interpretation" of what happened was that

**6.** *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939).

Rickman "did not realize that [he] was one day late," Rickman responded, "That is something you could assert. Not necessarily agree with you." At one point, Rickman testified he could not recall whether he counted the days before filing the motion; at another point, he testified he did not count.

█ In short, although Henderson bore the burden of proof on the diligence issue, neither Rickman nor Meaders ever gave a reason for filing the untimely motion for new trial. In fact, as stated previously, neither would even say whether he or she believed it was timely or untimely when filed; each simply said he or she could not "recall." Assuming a party's pursuit of an *unavailable* legal remedy could be considered diligence, this testimony is no evidence of diligence because a jury could only draw an inference in one of two ways: (1) the lawyer filed the motion for new trial knowing it was untimely or (2) the lawyer filed the motion for new trial without realizing the time for doing so had expired. Neither of these inferences could support a due diligence finding in this case. If Rickman and Meaders knew the motion was untimely when filed, they intentionally misled the trial court with their pleading. More importantly, they intentionally pursued a remedy they knew was not available. On the other hand, if they did not know the motion was untimely when filed, and in the absence of any reason to justify their action, their conduct clearly could not constitute diligence. *Cf. West Columbia Nat'l Bank v. Griffith,* 902 S.W.2d 201, 206 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (concluding bill of review plaintiff's misinterpretation of the law insufficient as a matter of law to show he was free from fault or negligence in letting default judgment be taken against him). This is so because an attorney is charged with knowledge of the law. *See Crawford v. Davis,* 148 S.W.2d 905, 908 (Tex.Civ.App.—Eastland 1941, no writ).

Consequently, a prudent attorney would have known the deadline had expired for filing a motion for new trial.

Furthermore, Henderson's attorneys pursued an unavailable legal remedy and ignored at least one other available legal remedy: a rule 306a motion to extend the trial court's plenary power. Neither Rickman nor Meaders could say why a rule 306a motion was not filed; instead, they testified the supplemental motion met the requirements of the rule, a position this Court has clearly determined against them. *See Thompson,* 997 S.W.2d at 622. Neither could "recall" whether a rule 306a motion was ever discussed, although the firm's billing documents did not reference rule 306a, and, as stated previously, the motion for new trial specifically stated it was "presented within the time allowed by law on motions for new trial, the default judgment in this case having been rendered on the 22nd day of March, 1993." There is simply no evidence in this record that Henderson's lawyers ever contemplated a rule 306a motion until 1995 when they argued the supplemental motion for new trial met the requirements of the rule.

Reviewing the evidence in the light most favorable to the jury's finding, we conclude there is no evidence that Rickman or Meaders acted diligently to set aside the default judgment. Any self-serving testimony by Rickman or Meaders that they believed they acted diligently is conclusory and is no evidence of diligence. *See Lewelling v. Lewelling,* 796 S.W.2d 164, 167 n. 5 (Tex.1990); *see also Dolcefino v. Randolph,* 19 S.W.3d 906, 918 (Tex.App.—Houston [14th Dist.] 2000, pet. denied).

In reaching our conclusion, we have reviewed the evidence Henderson asserts is "ample evidence" of due diligence. He relies almost entirely on evidence that shows his attorneys' actions in pursuing the unavailable remedy and the fact he was "successful" at keeping the default

judgment vacated "through at least five stages with two different judges and a court of appeals mandamus panel." Whether Henderson was successful and "diligent" at avoiding the effects of basic, established procedural law, however, is not the issue. The question is whether there is any evidence to show Henderson was diligent at availing himself of adequate legal remedies. He has not offered any citations to evidence, nor has our review shown any, to explain his act in filing an untimely motion for new trial (clearly, an inadequate legal remedy) in lieu of pursuing an adequate legal remedy, a rule 306a motion.

 "Equity aids the diligent and not those who slumber on their rights." *Callahan v. Giles*, 137 Tex. 571, 575, 155 S.W.2d 793, 795 (1941). The concepts of negligence and due diligence, in the context of a bill of review, are mutually exclusive. A party cannot be negligent and also exercise due diligence. Here, we have concluded there is not a scintilla of evidence to show that Henderson's agents acted diligently to avail themselves of available legal remedies to set aside the default judgment. Thus, regardless of the jury's answers to the other two questions, Henderson was not entitled to bill of review relief. Because Henderson is bound by the acts of his agents, we conclude the trial court erred in denying the Thompsons' motion for judgment notwithstanding the verdict and then granting the bill of review. We therefore sustain the Thompsons' fourth and fifth points of error. Our disposition of these points makes it unnecessary to consider their remaining issues regarding the bill of review.

We now turn to the trial court's dismissal of the garnishment action. The trial court dismissed the action based on the take-nothing judgment against the Thompsons. Because we have concluded that the bill of review was improperly granted and the March 22, 1993 default judgment improperly vacated, we likewise conclude the trial court's dismissal order was improper. However, we do not accept the Thompsons' invitation to review, for the first time, the merits of a summary judgment motion that the trial court obviously did not consider. Accordingly, we reverse the trial court's dismissal order and remand for further proceedings.

We reverse the trial court's judgment granting the bill of review, vacating the March 22, 1993 default judgment, and ordering appellants take nothing on their claims against Henderson. We render judgment that the bill of review is denied and reinstate the March 22, 1993 default judgment as the final judgment in this case. We reverse the dismissal of the writ of garnishment action and remand for further proceedings.