In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00057-CR


______________________________




FRANK HERBERT MCCLAIN, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 159th Judicial District Court


Angelina County, Texas


Trial Court No. 25,734




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 Frank Herbert McClain, Jr., appeals his conviction for theft of trade secrets. (1) McClain was
employed for several years by Didrickson Associates, Inc., to repair circuit boards which formed part
of the control mechanism for General Electric (GE) gas turbines. When McClain left Didrickson
Associates to form his own business, McClain removed approximately 100 backsheets, or circuit
diagrams, from the files of Didrickson Associates. McClain later returned the files to Didrickson
Associates. Approximately four years later, the State charged McClain with theft of trade secrets. 
A jury found McClain guilty, and the trial court assessed punishment at seven years' imprisonment. 
McClain argues 1) the evidence is legally insufficient, 2) the evidence is factually insufficient, 3) the
trial court erred in revoking McClain's bond, and 4) the trial court erred in instructing the jury
concerning the definition of "owner." 

I. Factual Background

 At the time of the alleged offense, Rhonel Didrickson, an engineer, was the primary owner
of Didrickson Associates, which, among other things, provided technical engineering support for
"aero-derivative packages" (2) and for GE gas turbines. The GE gas turbines on which Didrickson
Associates worked are used for a variety of purposes, such as the generation of electricity, driving
pumps or compressors, and driving ships. GE began to phase out the older turbines and ceased the
manufacture of the cards which controlled them so, in the early nineties, Didrickson Associates hired
Ed Watson to start an electronics laboratory to repair existing circuit boards (the trade refers to these
circuit boards as "cards") which formed a necessary part of the control panels for the GE turbines. 
The control panel introduced as an exhibit at trial contained over 100 such cards, although some of
the cards were duplicates. Prior to starting the electronics laboratory, Didrickson Associates had
merely repaired the controls or replaced the circuit boards. In order to repair the cards, it is necessary
to first obtain a diagram of the circuit. That diagram is referred to as a "backsheet." Didrickson
Associates assembled its large inventory of these backsheets through four primary means. Most of
the backsheets accompanied the cards or panels which had been purchased; others were obtained
from training schools which were attended by Didrickson Associates employees, from customers
who had hired Didrickson Associates to repair a card, and from prior competitors when they retired. 

 During the course of operating the electronics laboratory, Didrickson Associates had three
electronic technicians in succession: Watson, McClain, and Scott Fiester. Didrickson Associates
hired McClain to replace Watson, and Fiester succeeded McClain. During his three-year tenure with
Didrickson Associates, McClain was the only electronics technician employed by the company. 
During his employment, McClain expressed an interest in purchasing the electronic card repair
portion of the business, but the parties were not able to agree on a price. 

 While an employee of Didrickson Associates, McClain decided to generate and keep as
work-saving devices typewritten set-up sheets which summarized some of the information on the
backsheets, and continued to do so during his employment. In some circumstances, summaries of
information were written on the backsheets themselves. Didrickson admitted that most of his
competitors will write an operating procedure based on the backsheet and that the backsheet usually
has all of the information needed to repair a defective or inoperable card. All of the information on
the set-up sheets, though in different form, was contained on the backsheets. In other words, the set-up sheet was a "map" and was "an index to kind of cut through the chase." 

 McClain was on vacation from July 2-11, 2001. During McClain's absence from work,
Didrickson determined that some 100-150 backsheets were missing from the electronics laboratory,
but these were subsequently returned. Shortly thereafter, McClain (who had no formal employment
contract containing a covenant not to compete) started his own business repairing cards and sent
letters to customers of Didrickson Associates announcing his resignation from his former employer. 

II. We Lack Jurisdiction Over the Revocation of McClain's Appeal Bond

 As a preliminary matter, we will address McClain's third point of error. McClain claims that
the trial court erred in revoking his appeal bond. For the reasons heretofore stated in our order issued
April 23, 2008, on McClain's motion for preference, we reaffirm that we lack jurisdiction over this
complaint. The right to appeal from a ruling on bail pending appeal is governed by Article 44.04(g). 
See Tex. Code Crim. Proc. Ann. art. 44.04(g) (Vernon 2006). Such an appeal "is separate from
the appeal of the conviction and punishment, and it must be perfected by a separate notice of appeal." 
Davis v. State, 71 S.W.3d 844, 845 (Tex. App.--Texarkana 2002, no pet.); see also Faerman v.
State, 966 S.W.2d 843, 848 (Tex. App.--Houston [14th Dist.] 1998, no pet.). McClain has not filed
a separate notice of appeal as required by Rule 31 of the Texas Rules of Appellate Procedure. See
Tex. R. App. P. 31; Faerman, 966 S.W.2d at 848. McClain's third point of error is overruled.

III. The Sufficiency of the Evidence

 Intellectual property protections in the United States exist for the primary purpose of
providing incentives to invest and create. Robert P. Merges, et al., Intellectual Property in the
New Technological Age, 12 (2d ed. 2000). Such protections, though, will impose certain social
costs on the public, such as decreasing the free exchange of ideas. The extent that intellectual
property is protected seeks to balance "the social benefit of providing economic incentives for
creation" against "the social costs of limiting the diffusion of knowledge." Id. at 15.

 The principal modes for protection of intellectual property rights include patent, copyright,
trademark or trade dress, and trade secrets. Id. at 1-2. Unlike the other principal modes of
intellectual property protection, trade secret protection only protects an owner from misappropriation
of or the unlawful discovery of an idea. In order for there to be a violation of the right to protect a
trade secret, the actor must have wrongfully acquired the information. Id. at 35. 

 Under the Texas Penal Code, a person commits theft of a trade secret if he or she, without
the owner's effective consent, knowingly: "(1) steals a trade secret; (2) makes a copy of an article
representing a trade secret; or (3) communicates or transmits a trade secret." Tex. Penal Code
Ann. § 31.05(b) (Vernon 2003). Section 31.05 of the Texas Penal Code defines trade secret as being
"the whole or any part of any scientific or technical information, design, process, procedure, formula,
or improvement that has value and that the owner has taken measures to prevent from becoming
available to persons other than those selected by the owner to have access for limited purposes." 
Tex. Penal Code Ann. § 31.05(a)(4) (Vernon 2003). Unlike the general theft statute, theft of trade
secrets does not require the State to prove intent to deprive the owner of the trade secret. (3) Compare
Tex. Penal Code Ann. § 31.05 (Vernon 2003) with Tex. Penal Code Ann. § 31.03 (Vernon Supp.
2008). 

 Texas caselaw has clarified the above definition of trade secrets in a number of ways. Most
relevant to this case, the Dallas Court of Appeals has held that a trade secret cannot be something
within public knowledge. See Leonard v. State, 767 S.W.2d 171, 175 (Tex. App.--Dallas 1988),
aff'd sub. nom. Schalk v. State, 823 S.W.2d 633 (Tex. Crim. App. 1991). In two opinions focusing
on whether security measures were sufficient to secure secrecy, the Texas Court of Criminal Appeals
has refined the secrecy element of trade secrets. See Weightman v. State, 975 S.W.2d 621, 624 (Tex.
Crim. App. 1998); Schalk, 823 S.W.2d at 640. "It is axiomatic that the core element of a trade secret
must be that it remain a secret." Schalk, 823 S.W.2d at 640. However, "absolute secrecy is not
required"; rather, a substantial element of secrecy must exist. Id. (citing Q-CO Indus., Inc. v.
Hoffman, 625 F.Supp. 608 (S.D.N.Y. 1985)). A substantial element of secrecy exists when "'except
by use of improper means, there would be difficulty in acquiring the information.'" Hoffman, 625
F.Supp. at 617 (quoting A.H. Emery Co. v. Marcan Prods. Corp., 389 F.2d 11, 16 (2d Cir. 1968)). 

 In reviewing the legal sufficiency of the evidence in a case before us, we view all of the
evidence in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

 In a factual sufficiency review, we review all the evidence, but do so in a neutral light and
determine whether the evidence supporting the verdict is so weak or is so outweighed by the great
weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly
unjust. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); see Roberts v. State, 220
S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim.
App. 2006); see also Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). "Although an
appellate court reviewing factual sufficiency has the ability to second-guess the jury to a limited
degree, the review should still be deferential, with a high level of skepticism about the jury's verdict
required before a reversal can occur." Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.
2007).

 McClain challenges the sufficiency of the evidence in three ways: a) the security measures
taken by Didrickson Associates were insufficient; b) the alleged trade secrets are not trade secrets;
and c) McClain had the right to his own work product. In our analysis, we will confine our
discussion to the theories advanced by the State--that each backsheet, individually, is a trade secret
or that the improvements to the backsheets are trade secrets.

 A. The Evidence of Security Measures Is Sufficient

 The State argues the backsheets are trade secrets because Didrickson Associates took
sufficient security measures to ensure they remained secret. The Texas Court of Criminal Appeals
has stated, when determining whether security measures were effective, the following factors are
relevant: (1) nondisclosure agreements; (2) plant security; (3) access to information; and (4) other
measures. Schalk, 823 S.W.2d at 636-37. 

 The record contains some evidence of security measures to ensure that the backsheets
remained secret. The building in which they were kept was secured with an alarm and deadbolts. 
The filing cabinets in which the backsheets were usually stored were kept locked and only McClain
and Didrickson had keys. Although there was no formal nondisclosure agreement as a part of
McClain's employment, (4) Didrickson testified that he had explained to McClain the need for secrecy. 

 The record, though, also contains some contrary evidence. As pointed out by McClain,
Didrickson Associates did not diligently protect the backsheets. Didrickson admitted on cross-examination that he would share the backsheets with customers and on at least one occasion had
shared a backsheet with a competitor. Although most of the backsheets were kept locked in the
filing cabinet, Didrickson admitted that the backsheets which were in most common use were kept
in a binder which was not secured. 

 We are unable to reach the high level of skepticism required to disturb the jury's finding on
this point. Didrickson's credibility is the sole province of the jury. The contrary evidence is not
strong enough to overcome the deference we grant to the jury. The evidence of security measures
is sufficient for the jury to have concluded that Didrickson Associates took measures to ensure that
the information remained secret.

 B. The Backsheets Are Not Trade Secrets

 At trial, the State argued the backsheets (5) are trade secrets because they contain technical
information and have value. In order for a person to commit theft of a trade secret, the information
taken must be a trade secret. The simple fact that information has value does not make that
information a trade secret. McClain argues the backsheets are not trade secrets because they are
public information. 

 The record conclusively establishes the backsheets were public knowledge. Didrickson
admitted the backsheets had been placed in the public domain by GE, the original publisher. When
asked, "[Y]ou're not claiming an intellectual property right or the ownership of the trade secret that
is labeled proprietary information of General Electric Company, are you? You're not the sole --,"
Didrickson testified, "I did not design that circuit. I'm not claiming I own the design of that circuit. 
I'm claiming I own that paper that that circuit is on and it was in my file." (6) Didrickson admitted that
the backsheets have been "floating around in public for -- some of them for 40 years." 

 The backsheets are not trade secrets because they have been released into the public domain. 
"'Matters of general knowledge in an industry cannot be appropriated by one as his secret.'" Wissman
v. Boucher, 150 Tex. 326, 330, 240 S.W.2d 278, 280 (Tex. 1951) (quoting Restatement, Torts,
ch. 36, p.7)). "Clearly, if an article that is a trade secret becomes known to the community, it loses
its status as a trade secret." Leonard, 767 S.W.2d at 175. The bell, once rung, cannot be unrung. 
Once in the public domain, the trade secret must remain in the public domain. See Kewanee v.
Bicron, 416 U.S. 470, 484 (1974) ("By definition a trade secret has not been placed in the public
domain."). Although the backsheets may be difficult to find due to their age and obsolete status, (7)
the backsheets--once having become public knowledge--remain public knowledge.

 In Weightman v. State, the Fourteenth District Court of Appeals, in a case for the theft of
trade secrets, determined that the evidence was legally insufficient when a drawing which was
alleged to have been a trade secret had previously been released to the public. Weightman v. State,
Nos. 14-93-01094-CR, 14-93-01095-CR, 14-93-01096-CR, 14-93-01097-CR, 1996 Tex. App.
LEXIS 5472 (Tex. App.--Houston [14th Dist.] Dec. 12, 1996) (not designated for publication), aff'd
975 S.W.2d 621 (Tex. Crim. App. 1998). Similar to Weightman, no rational juror could have
concluded that the backsheets were trade secrets because the evidence conclusively established the
backsheets had been released into the public domain. 

 C. Even if the Improvements Were Trade Secrets, McClain Owns the
Improvements


 The State argues that even if the backsheets themselves were not trade secrets, the
improvements to the backsheets (i.e., the notes or tips written on them) were trade secrets. We note
it is debatable that the improvements were even trade secrets. (8) Assuming, however, that the
improvements are trade secrets, the State failed to prove Didrickson Associates had an exclusive
right to the trade secrets. The only improvements identified as being stolen by McClain are the
set-up sheets. (9) Didrickson testified that the set-up sheets were McClain's idea and that McClain was
the only person who created the set-up sheets. 

 The State argues that the improvements belong to Didrickson Associates because McClain
developed the improvements during the course and scope of his employment. The State cites Davis
v. Alwac Int'l, Inc., 369 S.W.2d 797, 802 (Tex. Civ. App.--Beaumont 1963, writ ref'd n.r.e.), for the
proposition that the improvements belong to Didrickson Associates. The State's interpretation of
Davis is an oversimplification of the law which applies. Because the employee in Davis was hired
to invent, the Davis court only recited the rule applicable to employees hired to invent, not to other
employees. 

 "That an invention was conceived or developed while the inventor was employed by another
does not alone give the employer any right in the invention." Wommack v. Durham Pecan Co., 715
F.2d 962, 965 (5th Cir. 1983). When the trade secret originates from the employee, the employer's
ownership rights depends on the nature of the employment relationship which exists. In determining
ownership of the trade secret, we must balance competing policies: "the right of a businessman to
be protected against unfair competition stemming from the usurpation of his trade secrets and the
right of an individual to the unhampered pursuit of the occupations and livelihoods for which he is
best suited." Wexler v. Greenberg, 160 A.2d 430, 434 (Pa. 1959). An employer can prevent an
employee from revealing a trade secret which the employee "himself developed during the course
of his former employment" only by an express contract restricting its use or by virtue of the special
confidential relationship of the parties. Id. at 433-34. Because there is no evidence of an express
assignment from McClain to Didrickson Associates of McClain's rights to the improvements which
are the subject of this case, we must determine whether the employee-employer relationship in this
case is of the nature which necessarily implies such an assignment. 

 As the Beaumont court correctly held in Davis, the ownership of the invention, when there
is no express contractual assignment, depends on whether the employee was "'employed to invent
or devise such improvements.'" (10) Davis, 369 S.W.2d at 802 (quoting Standard Parts Co. v. Peck,
264 U.S. 52, 58 (1924)); see Teets v. Chromalloy Gas Turbine Corp., 83 F.3d 403, 407 (Fed. Cir.
1996). If an employee was not hired to invent or devise the improvements, the employee is entitled
to ownership of the improvements. United States v. Dubilier Condenser Corp., 289 U.S. 178 (1933);
see Wommack, 715 F.2d at 967. 

 The State did not establish that McClain was hired to design improvements to the backsheets. 
To the contrary, the State established that McClain, the holder of two associate degrees, was not
hired to design improvements. Didrickson testified that McClain's responsibility was responding
to inquiries from customers, to test and certify cards, and to repair defective cards. Didrickson
admitted that the set-up sheets had been McClain's idea and that all of them were produced by
McClain. Absent an express assignment, the improvements did not become the exclusive property
of Didrickson Associates.

 We note that Didrickson Associates may have a "shop right" to the improvements as a matter
of equity. An employer has a shop right when "the invention was developed by his employee during
the employer's time or with the assistance of the employer's property or labor." Wommack, 715 F.2d
at 965. A "shop right" is a nonexclusive right to practice the invention. Dubilier Condenser, 289
U.S. at 188. At best, Didrickson Associates has a "shop right" to the improvements or set-up
sheets--a nonexclusive right of ownership. 

 As a nonexclusive right, Didrickson Associates cannot, by virtue of McClain's shop right,
prohibit him from using the improvements which he developed. Even if the improvements or set-up
sheets were trade secrets, McClain owns the improvements subject to Didrickson Associates'
possible shop right. Because there was neither any evidence of an express assignment from McClain
to Didrickson Associates nor evidence that McClain was hired specifically to design or invent, the
evidence is legally insufficient that McClain committed theft of trade secrets. 

IV. Conclusion

 Although McClain may have obtained this information wrongfully, McClain is not guilty of
theft of trade secrets. (11) As information previously placed in the public domain, the backsheets are
not trade secrets and even if the set-up sheets had been trade secrets, the State failed to prove that
Didrickson Associates had the exclusive ownership rights to the improvements contained in the set-up sheets. Absent an express assignment of McClain's rights or evidence that McClain was hired
for the purpose of developing trade secrets, McClain owned the improvements, if any, contained in
the set-up sheets, subject to any shop rights held by Didrickson Associates. The evidence is legally
insufficient. Because the evidence is legally insufficient, it is unnecessary to decide McClain's fourth
point of error regarding error in the jury charge. 

 We reverse the judgment of the trial court and render a judgment of acquittal. 




 Bailey C. Moseley

 Justice


Date Submitted: September 10, 2008

Date Decided: October 17, 2008


Publish

1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.
2. Didrickson testified the "aero-derivative gas turbines" are gas turbines located on airplanes
which are "directly coupled to their compressors and their gears." 
3. Because tangible property, which consists of physical property composed of atoms, can
occupy only one place at any given time, the right to exclude others lies at the core of the traditional
Western concept of property. Robert P. Merges, et al., Intellectual Property in the New
Technological Age, 2 (2d ed. 2000). Intellectual property, as intangible property, does not have
this inherent characteristic of exclusivity. Id. The exchange of ideas does not deprive the original
owner of the idea. Id. 
4. Further, the Texas Court of Criminal Appeals has noted there is an implied duty of
confidentiality by virtue of the employment relationship even in the absence of an express written
agreement. Schalk, 823 S.W.2d at 640. "Although this duty does not bar use of general knowledge,
skill, and experience, it prevents the former employee's use of confidential information or trade
secrets acquired during the course of employment." T-N-T Motorsports, Inc. v. Hennessey
Motorsports, Inc., 965 S.W.2d 18, 22 (Tex. App.--Houston [1st Dist.] 1998, no pet.).
5. The backsheets introduced as exhibits were from the files of Didrickson Associates. 
Didrickson testified the backsheets were those which McClain had removed and later returned. 
6. While Didrickson Associates may have owned the paper on which the ideas were recorded,
Didrickson Associates did not necessarily have title to the ideas. Ideas are intangible and exist
independent of the physical medium on which they are recorded. As a theft of trade secrets case, the
issue in this case is whether McClain stole the ideas, not whether McClain stole the physical medium
on which the ideas were recorded.
7. David Kellum testified the backsheets "are a hard find." 
8. A trade secret must be "information that is not publicly available or readily ascertainable by
independent investigation." Numed, Inc. v. McNutt, 724 S.W.2d 432, 435 (Tex. App.--Fort Worth
1987, no writ) (contracts distributed to customers are not trade secrets); SCM Corp. v. Triplett Co.,
399 S.W.2d 583, 586 (Tex. Civ. App.--San Antonio 1966, no writ). Didrickson admitted that all
of the information on the set-up sheets was contained on the backsheets. Because the improvements
consisted entirely of information that was readily ascertainable from public information, i.e., the
backsheets themselves, the improvements may not be trade secrets. We will assume, without
deciding, that the improvements are trade secrets.
9. We note Didrickson answered yes when asked whether he or his employees had "made
changes, amendments, alterations, something of that nature, to increase [the backsheet's] value." The
backsheets introduced at trial had been used by Didrickson Associates since the alleged theft. In our
review of the exhibits, we only located two backsheets which had amendments on their face other
than highlighting. Exhibit 5Y was substantially modified. An ohm measurement had been added
to Exhibit 5EE. The record does not contain any evidence as to when these amendments occurred
or who made the amendments. Didrickson testified he could not identify writing on any of the
backsheets. The State failed to prove these amendments were in existence at the time McClain stole
the backsheets and that McClain did not make these amendments. Without evidence that the
amendments were made prior to the alleged theft and that the amendments were not made by
McClain, the amendments to the face of the backsheets cannot form the basis of the theft of trade
secrets allegations.
10. We note that Davis concerned patent law and did not involve trade secrets. Although we
are not aware of any Texas caselaw applying this doctrine to trade secrets, secondary authority
indicates the principle is applicable to trade secrets as well as patentable inventions. See 5 Milgrim
on Trade Secrets § 5.02 (Lexis 2008); 13 William V. Dorsaneo, III, and Herbert J. Hammond,
Texas Litigation Guide § 200.04 (Lexis 2008). 
11. We are not saying there is no form of legal redress available to Didrickson Associates for
McClain's actions--merely that the State has failed to prove McClain was guilty of theft of trade
secrets.


ext-justify:inter-ideograph;
mso-pagination:widow-orphan;tab-stops:center 3.25in'>                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00050-CV

                                                ______________________________

 

 

 

         IN RE: 
ESTATE OF MARGERY WANDA TAYLOR, DECEASED

 

 

                                                                                                  


 

 

                                       On Appeal from the County
Court at Law No. 2

                                                             Gregg County, Texas

                                                       Trial Court
No. 2006-0232-P

 

                                                        
                                          

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

I.          FACTUAL AND PROCEDURAL BACKGROUND

            This is an appeal by Johnnie Mae
Riley of the denial of her petition for bill of review December 11, 2008. Her
bill of review sought to overturn a judgment rendered against her January 30,
2007, after a jury trial regarding a contested will, of which Riley was the
proponent.

            Following
the filing of Rileys petition for bill of review, Ladonna Gale Suber Thigpen,
Phyllis Ann Meadors, and Harold Judson Suber[1]
filed a motion for summary judgment February 3, 2009, and on that same date,
the trial court entered an order setting a hearing on the motion for summary
judgment for March 13, 2009.[2]  Also on that day, Riley filed a motion to
recuse the court and on March 3, 2009, Riley filed an amendment of her recusal
motion.  The trial court, declining
recusal, referred the motion to the presiding administrative judge and an order
was entered March 16, 2009, denying the recusal motion.  On the same day the motion to recuse was
denied, a new order to reset the hearing on motion for summary judgment was
filed, resetting the hearing to March 27, 2009.  The judgment reflects that the summary
judgment hearing actually took place March 30, 2009.[3]  Riley was not present at the summary judgment
hearing March 30, 2009, and no motion for continuance was filed on her
behalf.  Riley filed a response to the
summary judgment motion after the hearing April 16, 2009. 

            The trial court entered a
summary judgment[4] April 17, 2009,
in favor of Thigpen, denying Rileys petition for bill of review.[5]
 The summary judgment, in an unusual
twist, in addition to denying the petition for bill of review, set out certain observations
and findings.[6]  Thereafter, on May 28, 2009, Riley filed a
motion for new trial.[7]
 Hearing
on the motion was set for June 17, 2009.  The order setting this hearing was mailed to
Riley by Connie Wade, Gregg County Clerk, on June 15, 2009.  Riley indicates that she failed to receive
the notice of the hearing until after 5:00 p.m. on June 17, 2009, and, thus,
did not appear.  On June 22, 2009, an
order denying Rileys motion for new trial was entered.[8]


            Riley then
filed a motion to vacate the order denying motion for new trial, this motion
being set for hearing August 5, 2009.[9]  On August 17, 2009, an order denying the
motion to vacate was entered, based upon the lack of plenary power in the trial
court, and on the secondary basis that even if the motion for new trial had
been timely filed, the grounds alleged were insufficient to warrant the grant of
a new trial.  Essentially, Riley appeals
from the entry of the summary judgment.  Riley
asserts a number of additional appellate points, as listed below. 

II.        ISSUES ON APPEAL

            Riley maintains that actions of
the trial court were in error in the following respects:

            1)         the
trial court erred by granting a summary judgment against Riley;

 

            2)         the
trial court erred in failing to grant a new trial because Riley did not receive
notice of the hearing date and time until after the hearing had taken place;

 

            3)         the
trial court erred in failing to rule that Riley timely filed her motion for new
trial by mailing the motion via United States mail on the day it was due;

 

            4)         the
trial court erred in failing to rule that Rileys motion to vacate order
denying motion for new trial was not an amended motion for new trial;

 

            5)         the
auxiliary judicial district judge erred in failing to rule that the reasons
presented in Rileys motion to recuse were sufficient to be granted;

 

            6)         the
trial court erred in failing to rule that Riley timely filed a motion for
rehearing on the motion to recuse;

 

            7)         the
trial court erred in failing to rule that the Texas Rules of Civil Procedure
allow a review on appeal, but not for a mandamus, of a motion to recuse does
not preclude a motion for rehearing filed in the trial court to be considered
by the Texas auxiliary judicial district judge;

 

            8)         the
Texas Rules of Civil Procedure requirement of only written motions for
continuance is a violation of due process of the Fourteenth Amendment to the Constitution
of the United States of America and the Bill of Rights to the Constitution of
the State of Texas.  Riley was thereby
deprived of her constitutional rights of due process and equal protection of
the law under both Constitutions because of an emergency situation;

 

            9)         the
Texas Rules of Civil Procedure allowing summary judgment procedures without the
agreement of the opposing party is a violation of due process and equal
protection of the laws under the Constitution of the United States of America
and the Bill of Rights of the Constitution of the State of Texas.  Riley was deprived of her constitutional
rights to due process and equal protection of the laws including the right of a
jury trial under the United States Constitution and the Texas Constitution;

 

            10)       since
the Fourteenth Court of Appeals issued an opinion that they did not have
jurisdiction because the motion for new trial following the judgment to the
contest was not timely filed, there had been no appeal and the petition for
bill of review was properly filed; and

 

            11)       the
trial court erred in ordering that no evidence pertaining to the will could be
presented to the jury during a contest of an application to probate the will
when that was what the trial was about.

 

III.       ANALYSIS
OF POINTS OF ERROR

            A.         The Trial Court Did Not
Err in Granting Summary Judgment

            The
standard for reviewing a summary judgment under Rule 166a(c) of the Texas Rules
of Civil Procedure[10]
is whether the moving party carried its burden of showing that there is no
genuine issue of material fact and that judgment should be granted as a matter
of law.  Shah v. Moss, 67 S.W.3d 836, 842 (Tex. 2001); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).  Further, a defendant who conclusively
negates at least one of the essential elements of each of the plaintiffs
causes of action or who conclusively establishes all of the elements of an
affirmative defense is entitled to summary judgment.  Cathey v. Booth, 900 S.W.2d 339, 341
(Tex. 1995) (per curiam).  In reviewing a
trial courts summary judgment, we resolve all doubts against the movant, and
we view the evidence in the light most favorable to the nonmovants.  Diversicare
Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005); KPMG Peat Marwick v. Harrison County Housing
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  

            The question
before the trial court was whether Riley had shown that she was entitled to an
equitable bill of review.  A bill of
review is an independent action to set aside a judgment (in this case, the
summary judgment) that is no longer appealable or subject to challenge by a
motion for new trial.  Wembley Inv. Co. v. Herrea, 11 S.W.3d
924, 92627 (Tex. 1999).  The elements necessary to establish
entitlement to an equitable bill of review are well established under Texas
law.  Due diligence must be exercised in
pursuing all adequate legal remedies against a former judgment, and through no
fault of his own, the party must have been prevented from making a meritorious
claim or defense by the fraud, accident, or wrongful act of the opposing party.
 Id.
at 927; see also Caldwell v. Barnes, 154 S.W.3d 93, 96 (Tex. 2004).  If legal remedies were available but ignored,
then relief by equitable bill of review is not available.  Wembley,
11 S.W.3d at 927.  The requirement that a
party diligently pursue its legal remedies is distinct from the discrete
elements necessary to establish entitlement to a bill of review.  Perdue v.
Patten Corp., 142 S.W.3d 596, 606 (Tex. App.Austin 2004, no pet.).

            The summary
judgment recites the fact that Riley was not present at the hearing and did not
file a response to the motion for summary judgment.  As this Court explained in Rivera v. White, 234 S.W.3d 802 (Tex.
App.Texarkana 2007, no pet.), the party moving for traditional summary
judgment carries the burden to establish that no material fact issue exists and
that it is entitled to judgment as a matter of law, thus the nonmovant has no
burden to respond to a summary judgment motion unless the movant conclusively
establishes its cause of action or defense.  Id.
at 807 n.3 (quoting M.D. Anderson Hosp.
& Tumor Inst. v. Willrich, 28
S.W.3d 22, 23 (Tex. 2000); see also
Rhône-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999) (The trial
court may not grant summary judgment by default for failure to file a response
to a motion for summary judgment when the movants summary judgment proof is
legally insufficient.); Rizkallah v.
Conner, 952 S.W.2d 580, 582 (Tex. App.Houston [1st Dist.] 1997, no pet.) (holding
that lack of response by nonmovant does not supply by default the summary
judgment proof necessary to establish the movants right to summary judgment
and that nonmovant is limited on appeal to arguing the legal sufficiency of
the grounds presented by movant) (citing McConnell
v. Southside Sch. Dist., 858 S.W.2d 337, 343 (Tex. 1993))).  Because a motion for summary judgment must
stand on its own merits (i.e., it can only be granted if it meets the
qualifications for the grant of summary judgment), the fact that Riley did not
appear at the hearing or timely file a summary judgment response is not outcome
determinative. 

            Thigpen
contends that summary judgment was appropriately granted because Riley failed
to diligently pursue her legal remedies, and, having failed to do so, was not
entitled to a bill of review.  The
summary judgment evidence before the trial court established that Riley did not
timely pursue an appeal of the judgment entered January 30, 2007, based on the
pleadings before the trial court.[11]  The memorandum opinion of the Twelfth Court
of Appeals indicates that although Rileys motion for a new trial was due to
have been filed on or before March 1, 2007, in accordance with Rule 329b(a) of
the Texas Rules of Civil Procedure,[12]
she did not file it until March 2, 2007. 
It had not been mailed by United States Postal Service mail but, rather,
was sent via Federal Express courier. 
The Twelfth Court of Appeals determined that:

If a document is sent to the proper
clerk by first class United States mail in a properly addressed, stamped
envelope and is deposited in the mail on or before the last day for filing, the
document is deemed timely filed if it is received by the clerk not more than
ten days tardily.  Tex. R. Civ. P. 5.  However, this rule does not apply when the
motion for new trial is delivered by Federal Express rather than the United
States Postal Service.  See Ackal
v. Blockbuster, Inc., 08-02-00268-CV, 2002 WL 31151434, at *1 (Tex. App.El
Paso 2002, pet. denied) (not designated for publication); Carpenter v. Town & Country Bank, 806 S.W.2d 959, 960 (Tex.
App.Eastland 1991, writ denied). 
Because Appellants motion for new trial was not received by the trial
court clerk on or before March 1, 2007, the motion was untimely.

 

            It is
fundamentally important that judgments be accorded finality.  A bill of review seeking to set aside an
otherwise final judgment is therefore scrutinized by Texas courts with extreme
jealousy, and the grounds on which interference will be allowed are narrow and
restricted.  Montgomery v. Kennedy, 669 S.W.2d 309, 312 (Tex. 1984); Thompson v. Henderson, 45 S.W.3d 283,
287 (Tex. App.Dallas 2001, pet. denied). 
Here, Riley was entitled, after an adverse judgment, to pursue the legal
remedy of appeal.  The exercise of due
diligence in the pursuit of all available legal remedies is a prerequisite to
entitlement to an equitable bill of review. 
Wembley, 11 S.W.3d at 92627.  Said another way, a party who fails to timely
avail itself of available legal remedies is not entitled to relief by bill of
review.  Tice v. City of Pasadena, 767 S.W.2d 700, 702 (Tex. 1989) (orig.
proceeding).  Here, the evidence in the
record establishes that Riley failed to timely avail herself of the legal
remedy of pursing an appeal of the judgment of the trial court.  Because Riley failed to timely pursue her
appeal of the trial courts judgment, she was required to show good cause for
her failure to do so in order to be entitled to relief by a bill of
review.  Garza v. Atty. Gen. of Tex., 166 S.W.3d 799, 818 (Tex. App.Corpus
Christi 2005, no pet.).  The record
before the trial court at the summary judgment hearing did not include evidence
of such good cause.  Accordingly, we
conclude that Thigpen carried her burden of showing that there was no genuine
issue of material fact which would preclude her from recovering summary
judgment.  The trial court correctly
entered summary judgment in her favor as a matter of law. 

            B.         The Trial
Court Did Not Err in Failing to Grant a New Trial

            Riley
contends that she was entitled to notice of the hearing date for the motion for
new trial as a matter of due process of law.  LBL Oil Co. v. Intl Power Servs., Inc.,
777 S.W.2d 390 (Tex. 1989).  Riley is
correct in her contention that once a party makes an appearance in a cause,
that party is entitled to notice of a trial setting as a matter of due process
under the Fourteenth Amendment to the Federal Constitution.  Riley incorporates by reference the exhibits
attached to her second motion to extend time to file her brief in this
Court.  Those exhibits, as discussed
above, indicate that the hearing on Rileys motion for new trial was set for
June 17, 2009, and that notice of said hearing was not received by Riley until
that very date.  Riley was thus unable to
appear at the hearing.  This concludes
Rileys argument.  

            To the
extent Riley is complaining of prejudice, we note that the trial court granted
Riley a hearing on her motion to vacate the denial of her motion for new
trial.  In its order denying Rileys
motion to vacate, the trial court found that the summary judgment denying the
bill of review was entered April 17, 2009. 
Rileys motion for new trial was filed May 28, 2009, and thus was denied
as untimely filed.[13]  We further note that the motion for new trial
was uncontroverted; lacking contravention, there was no need for an evidentiary
hearing.  Finally, it was within the
power of the trial court to have simply declined to rule on this motion, at
which point it would have been overruled by operation of law on the seventy-sixth
day after the judgment was signed.  Tex. R. Civ. P. 329b(c).  Further analysis of this point of error would
require this Court to perform an independent review of the record and
applicable law to determine the existence of error.  We decline to stray from our role as a
neutral adjudicator and recognize that an appellate court has no duty to make
such an independent analysis to determine whether error exists.  Strange
v. Contl Cas. Co., 126 S.W.3d 676, 678 (Tex. App.Dallas 2004, pet.
denied).  We overrule this point of
error. 

            C.        Waiver of
Additional Appellate Points 

            Riley has
listed a number of additional appellate points. 
However, these issues were not briefed, and none of these issues contain
citations to the record.  Rule 38.1(i) of
the Texas Rules of Appellate Procedure states that the appellants brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record. 
Tex. R. App. P.
38.1(i).  This requirement is not
satisfied by merely uttering brief, conclusory statements unsupported by legal
citations.  Valadez v. Avitia, 238 S.W.3d 843, 845 (Tex. App.El Paso 2007, no
pet.).  Failure to cite legal authority
or to provide substantive analysis of the legal issues presented results in
waiver of the complaint.  Martinez v. El Paso County, 218 S.W.3d
841, 844 (Tex. App.El Paso 2007, pet. struck). 
Riley has failed to meet this requirement.  Rileys brief consists largely of a series of
points of error.  These points of error
are not briefed; they are simply restated within the body of the brief.  These points of error are not accompanied by
citations to authority, citations to the record, or substantive analysis of the
legal issues presented.[14]  

            The law is
well established that pro se litigants are held to the same standards as
licensed attorneys and must comply with all applicable rules of procedure.  Valadez,
238 S.W.3d at 845.  A pro se litigant is
required to properly present its case on appeal, just as it is required to
properly present its case to the trial court. 
Martinez, 218 S.W.3d at
844.  If this were not the rule, pro se
litigants would benefit from an unfair advantage over those parties who are
represented by counsel.  Id. 
Therefore, we cannot make allowances simply because a pro se litigant is
not an attorney.  Foster v. Williams, 74 S.W.3d 200, 202 (Tex. App.Texarkana 2002,
pet. denied).  An appellate court has no
duty to perform an independent review of the record and of the applicable law
to determine whether there was error.  Strange, 126 S.W.3d at 678.  Were we
to do so, we would be forced to abandon our role as neutral adjudicators and
become an advocate.  See Plummer v. Reeves, 93 S.W.3d 930, 931 (Tex. App.Amarillo 2003,
pet. denied).

            Because the
majority of Rileys brief fails to comply with the requirements of Rule 38.1(i)
of the Texas Rules of Appellate Procedure, she has waived all appellate points
she may have intended for this Court to address, with the exception of those
points previously addressed in this opinion. 
Valadez, 238 S.W.3d at 845.

IV.       CONCLUSION

                        We
determine that the trial court correctly granted Thigpens motion for summary
judgment.  Further, we find no error (to
the extent this issue was briefed) in the denial of Rileys motion for new
trial.  We conclude that Riley waived all
additional appellate issues due to lack of compliance with Rule 38.1(i) of the
Texas Rules of Appellate Procedure.  

            Accordingly,
we affirm the judgment of the trial court. 


 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          January
19, 2010

Date Decided:             January
28, 2010

 

 











[1]To
whom collective reference is hereinafter made in the singular as Thigpen.

 





[2]The
summary judgment hearing was previously scheduled to be heard on February 26,
2009.  

 





[3]The
remarks of the trial court at the summary judgment hearing indicate that both
the hearing date of March 27, 2009, and the hearing date of March 30, 2009,
were agreed to by Riley.  There is no
evidence of this agreement in the clerks record, and no written order
rescheduling the summary judgment hearing to March 30, 2009.  

 





[4]Riley
represented herself at all stages of the proceedings, from the jury trial
through this appeal.  

 





[5]Previously,
Rileys motion for new trial was denied as untimely.  On July 18, 2007, the Twelfth Court of Appeals
issued a Memorandum Opinion dismissing Rileys appeal for lack of jurisdiction
for the reason that the notice of appeal was not timely filed.  

 





[6]Those
findings are: 

 

1) Johnnie Mae Riley sought
to admit to probate an oral rendition of the purported lost holographic will of
Margery Wanda Taylor, which was contested by Thigpen, Meadors, and Suber; 2)
jury trial commenced on January 30, 2007; 3) Johnnie Mae Riley appeared pro se and
announced ready for trial; 4) the jury rendered a verdict for Thigpen, Meadors,
and Suber, and the court entered a judgment denying the will to probate and
finding that Taylor died intestate and that Thigpen, Meadors, and Suber were
her only heirs; 5) Johnnie Mae Riley filed a motion for new trial February 28,
2007, which was denied April 27, 2007; 6) Riley filed a notice of appeal March
2, 2007, more than ninety days after the entry of the judgment; 7) on June 27,
2007, the Texarkana Court of Appeals issued a notice of intent to dismiss
Rileys appeal for lack of jurisdiction; 8) on July 18, 2007, the Texarkana
Court of Appeals issued a Memorandum Opinion and a Judgment dismissing Rileys appeal
for lack of jurisdiction for the reason that the Notice of Appeal was not
timely filed; 9) Riley failed to pursue with due diligence all legal remedies
available to her as to the judgment dated January 30, 2007; 10) Respondents are
entitled, as a matter of law, to a summary judgment denying the bill of review
filed by Riley as to the judgment entered in this cause January 30, 2007.

 

We note that some of the documents referenced in the
findings of the trial court do not appear in the record before this Court.  There are, however, certain documents
attached to the affidavit of Vincent L. Dulweber in support of the motion for
summary judgment as to the bill of review. 
These documents include 1) notice of intent to dismiss issued by the
Twelfth Court of Appeals on June 26, 2007, in cause number12-07-00232-CV; 2) a
Memorandum Opinion per curiam issued by the Twelfth Court of Appeals July
18, 2007, in cause number 12-07-00232-CV; and 3) a Judgment issued by the
Twelfth Court of Appeals July 18, 2007, in cause number 12-07-00232-CV.  These documents are incorrectly referenced in
the Dulweber affidavit and in the summary judgment findings as having been
issued by the Texarkana Court of Appeals.

 





[7]In
her motion for new trial, Riley indicates that she traveled from Houston, Texas,
to Longview for the purpose of attending the hearing, but due to previous injuries
and a worsening of her condition, Riley was unable to attend the hearing March
30, 2009.  Riley also claimed, in her
motion for new trial, the unconstitutionality of Rule 166a of the Texas Rules
of Civil Procedure (Tex. R. Civ. P.
166a) on the basis that no oral testimony is permitted, and the presentation of
certain exhibits is prohibited.  

 





[8]The
denial of the motion for new trial was made on the basis that said motion was
untimely filed (summary judgment having been entered April 17, 2009).

 





[9]The
motion to vacate the order denying the motion for new trial was based upon the
fact that Riley did not have notice of the June 17, 2009, hearing on her motion
for new trial.  The relief requested was
a new trial.

 





[10]Tex. R. Civ. P. 166a(c).

 





[11]Those
pleadings include:  1) application to
probate will; 2) contest; 3) final judgment entered January 30, 2007; 4) motion
for new trial filed by Riley February 28, 2007; 5) order denying motion for new
trial entered April 27, 2007; 6) notice of appeal filed by Riley March 2,
2007; 7) affidavit of Dulweber; 8) notice of intent to dismiss issued by the
Twelfth Court of Appeals June 26, 2007; 9) Memorandum Opinion per curiam issued
by the Twelfth Court of Appeals July 18, 2007; and 10) judgment issued by the
Twelfth Court of Appeals July 18, 2007.

 





[12]Tex. R. Civ. P. 329b(a).

 





[13]At
the hearing on Rileys motion to vacate, Riley contends that she mailed the
motion for new trial to the clerk in a timely fashion, but the mailing was
returned to her.  Riley then sent the
motion for new trial via Federal Express to the office of the clerk. 





[14]The
majority of the points of error listed do not appear to directly complain of
the summary judgment; rather, they complain of various trial court rulings made
during the course of the litigation, with no apparent nexus to the summary
judgment.